## ST. LOUIS, B. & M. RY. CO. v. DAVIS.
(No. 8489.)

(Court of Civil Appeals of Texas. Galveston. April 24, 1924. Rehearing Denied May 22, 1924.)

**1. Continuance &#8681;17—Court's discretion not abused by denying defendant's continuance to investigate earnings and habits of plaintiff before going to trial.**

In an employé's action for injuries, court did not abuse its discretion in denying a continuance to enable defendant to investigate earnings and working habits of plaintiff before going to trial, where the suit was filed nearly a year after injury occurred and trial did not occur until two weeks after defendant was cited.

**2. Evidence &#8681;537—Plaintiff's sister held competent as professional nurse to testify concerning his physical condition after injury.**

Testimony of plaintiff's sister after an injury as to his physical condition was admissible, where she saw him four days after his injury and nursed him as a professional and she had previously had 18 months' professional training as a nurse.

**3. Evidence &#8681;364—Testimony of insurance man as to plaintiff's life expectancy based on mortality tables held competent.**

Testimony of persons, who had been in life insurance business for a number of years, as to injured plaintiff's life expectancy, was competent where they based their testimony solely on the American Tables of Mortality.

**4. Damages &#8681;192—Mental suffering implied though no direct testimony thereof.**

Where plaintiff's back was broken and complete nervous breakdown and paralysis occurred, mental suffering would be implied, though there was no direct testimony thereof.

**5. Damages &#8681;132(3)—$22,500 held not excessive for permanent injuries to back.**

Damages of $22,500 were not excessive for permanent injuries to back, plaintiff prior to his injury having a life expectancy of 33.92 years and then earning $4.64 per day.

**6. Master and servant &#8681;286(31), 289(25)—Evidence as to injury to railroad workman run down by motor car held not to warrant instructed verdict because showing his negligence and railroad's freedom from negligence.**

Evidence that a railroad carpenter walking to boarding cars was run down by motor cars joined together making very little noise, and that no warning was given him until too late for him to get out of the way, *held* not to warrant instructed verdict for defendant because showing that plaintiff was negligent and that defendant was free from negligence that proximately caused injury.

**7. Master and servant &#8681;88(7)—Injury to railroad carpenter going from work held in "course of employment."**

Where a railroad carpenter had ceased actual labor for the noon hour and was proceeding to boarding cars provided for the purpose on another part of defendant's premises not only to get his dinner, but also some tools which were necessary for his work, an injury occurring to him on the way was "in the course of his employment."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

**8. Appeal and error &#8681;1004(1)—Jury finding as to amount plaintiff's recovery should be diminished by his negligence not set aside unless without evidence to support.**

Appellate court cannot set aside a jury's finding under Rev. St. art. 6649, as to amount plaintiff's recovery should be diminished by his negligence unless it is without evidence to support it, or so against preponderance of evidence as to be clearly wrong.

**9. Negligence &#8681;136(31)—Contributory negligence diminishing recovery question for jury.**

Rev. St. art. 6649, confers upon jury power of determining as to what amount plaintiff's recovery should be diminished by his own negligence.

**10. Negligence &#8681;135—Evidence held not to preponderate against finding of contributory negligence diminishing recovery.**

Evidence that a railroad carpenter while proceeding along a customary path to boarding cars on defendant's premises to get his dinner was run down by two motor cars joined together making very little noise and no warning being given until too late for him to step aside, *held* not to preponderate against a finding that plaintiff's negligence contributed only 10 per cent. to the result of his injury.

&#8681;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Appeal and error ⬯248—Action of trial court cannot be challenged unless bill of exceptions taken thereto.**

The action of the trial court cannot be challenged as reversible error where no bills of exception are shown to have been taken to such action.

**12. Pleading ⬯364(2)—Refusal to strike averments elaborating general allegations of negligence held proper.**

In a railroad employé's action for injuries when struck by two motor cars joined together, court did not err in refusing to strike out averments in plaintiff's petition that the two cars being operated together as one and the shutting off of power caused a noiseless approach, such averments constituting relevant elaboration of general allegations of negligence.

**13. Master and servant ⬯270(10)—Evidence as to defective brakes on motor car held admissible.**

In an employé's action for injuries when struck by two motor cars joined together, evidence as to the defective brakes on the rear car was admissible.

**14. Trial ⬯132—Remarks of plaintiff's attorney on law held not reversible error.**

Remarks of plaintiff's attorney in an employé's action for injuries that "as a matter of law plaintiff was acting within the course of his employment" did not constitute reversible error, where on objection and before the court's ruling it was withdrawn by attorney himself and he proceeded to tell jury that they should be controlled as to the law by the court's charge and no written request was made to the court to instruct the jury not to consider the statement, nor did the court refuse to so instruct.

**15. Trial ⬯132—Withdrawal of improper argument ordinarily removes any harmful effect.**

The withdrawal of an improper argument in the absence of anything tending to indicate that the verdict was influenced by it, notwithstanding the withdrawal, ordinarily removes any harmful effect.

Appeal from District Court, Matagorda County; M. S. Munson, Judge.

Action by J. S. Davis against the St. Louis, Brownsville & Mexico Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. H. Crenshaw, Jr., of Kingsville, John W. Gaines, of San Antonio, and John M. Corbett, of Bay City, for appellant.

C. D. Johns, of Kingsville, Dougherty, Dougherty & Tarlton, of Beeville, and W. S Holman, of Bay City, for appellee.

GRAVES, J. The railway company appeals from a judgment for damages in appellee's favor on account of personal injuries received by him on its right of way in the town of Bay City, Tex., he being at the

time an employé of the company in the capacity of a carpenter.

Appellee alleged that on the day of the injury he and other employés were repairing what was known as the sandhouse, a building situated near the most northerly one of six railroad tracks appellant maintained at that place in the town, all these running parallel with each other and approximately east and west; that the company also maintained for its employés a boarding car, which on the occasion in question was located on the fifth track south from the sandhouse and about 150 yards to the east of it; that at the noon hour, work having been suspended on the building for the dinner meal, he, while in the course of his employment, started from the sandhouse to the boarding car to get his dinner and to secure some tools that were necessary for him to have in order to complete the work he was doing; that the second one of these tracks from the sandhouse was the main track along which most of the railway company's traffic was carried at that place, and, after proceeding a short distance down it, in the exercise of proper care he cut diagonally across towards the boarding car, and while going along on the third, or "passing," track, as it was called, which with the knowledge, consent, and acquiescence of the company was customarily used by the employés to and from the boarding car, after he had proceeded down it for 40 or 50 yards, he was run into from behind by two negligently operated motor cars of the appellant and injured.

The substance of the grounds of negligence alleged was that the two motor cars, approaching appellee from the west, which was in his rear, were so connected together by heavy timbers extending from one to the other as to essentially constitute a single vehicle having great momentum; that the power had been cut off from one or both of them so that they were coasting and approached appellee, who, as the operatives on the cars knew or could have plainly seen, was unaware of their presence, in a practically noiseless manner; that although he was at the time so on a track customarily used by appellant's employés for that purpose, especially at that hour, which it either knew or could have known, no lookout was kept for persons using this track at the time in question, nor was any warning given him soon enough that the cars were coming, but those in charge both carelessly operated them at a speed that prohibited their proper control and made no effort to stop in sufficient time; that the operatives on the cars discovered appellee's perilous position on the track and the evident fact that he did not see or know of the approach of the cars, in time to have avoided running him down by the use of the means at their command,

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but neglected to employ them; that the cars were defectively equipped with brakes, or were substantially defective by reason of the great weight of the timbers upon and so joining the two together, so that, after discovering the peril of the appellee upon the track, the servants of appellant in charge thereof were unable to stop the cars in time to avoid the injury.

The concluding paragraph of these averments, which are much extended, is in the nature of a recapitulation as follows:

"Plaintiff further says that defendant, its servants, agents and employés, operating said cars, and each of them, were negligent in the following respects, and such negligence proximately caused the injuries to plaintiff, herein alleged, viz.: (a) That they failed to keep a lookout for plaintiff while he was on said track, and by reason of such failure ran upon and over plaintiff with said motor cars. (b) That the front motor car had the power shut off and was being driven onward by the rear car, and the agents, servants and employés, operating said cars negligently failed to keep a lookout for plaintiff while he was on said track, and by reason thereof ran into and over plaintiff with said cars and thereby injured him as herein set out. (c) That after they saw plaintiff on said track, defendant, its servants, agents and employés, approaching plaintiff from behind, failed to warn plaintiff of the approach of said car until it was too late for plaintiff to avoid being struck by such cars, and by reason thereof plaintiff was struck and injured as herein alleged. Plaintiff says that defendant, its said servants, agents, and employés, were negligent in this further respect, that they discovered that plaintiff was in peril of being run over and injured by said cars, and after such discovery they failed to stop said car in time to avoid injury to plaintiff, though they could have done so in a manner consistent with their safety and with that of such cars, in time to have avoided such injury to plaintiff."

Appellant, after general and special demurrers and general denial, specially answered that it had not operated the motor cars in a careless or negligent manner in any respect, but, in the proper prosecution of its business, ran them with due care and at slow speed; that the appellee, without looking or listening to determine whether any cars were approaching along the "passing" track, suddenly, and without notice to appellant's operatives, stepped onto it just in front of these motor cars from the main track, where he was in perfect safety, and where such employés had expected him to remain; that, although the operatives immediately used every means at their command, it was then impossible to stop the cars before they struck appellee; that appellee's injuries were caused or contributed to by his own negligence in that (a) he was an adult of long experience about railroad tracks, had been an employé of appellant at Bay City for several weeks, and despite the fact that he knew by experience and otherwise that

the habit and custom of its employés, known as the bridge gang, was to come into Bay City about the noon hour on their motor cars to eat lunch at these boarding cars, he stepped upon the "passing" track when the motor cars had approached to within a few feet of him, without looking or listening to ascertain if any vehicle was on that track, and was run over; (b) there were, in addition to the main and the "passing" track, on which latter one he was injured, and to the south of it, three other parallel tracks known as No. 2, No. 3, and No. 4, the boarding car to which appellee was going being located on this last-mentioned one, all of which constituted safe ways to get to where he was going and were available to him for that purpose, but instead he negligently placed himself in the only position where he could have been injured in the manner claimed; further, that the appellee was barred from any recovery by reason of his violation of each of two agreements he had entered into with appellant, in consideration of his employment, the first of which bound him to give it notice thereof in writing within 30 days after receiving any injury, or forfeit any right to institute a suit therefor, and by the second of which he obligated himself not to stand in front of or get onto an engine or car coming towards him, and took upon himself the risk in doing such an act.

The trial court sustained demurrers to these defensive matters based upon such alleged contracts, and appellant has assigned no error to that action; neither does it seriously urge that any error was committed by the court in overruling, as was done, all of its own demurrers to the appellee's pleadings.

The cause was submitted to a jury upon special issues, which together with the jury's answers, were as follows:

"Question No. 1: Was the plaintiff in going upon or walking along the track of the defendant, known as the passing track, under the circumstances and at the time and place which you find from the evidence he did so, guilty of negligence as that term is defined in the second paragraph of this charge?

"Answer of the jury: Yes.

"Question No. 2: If you have answered question No. 1, 'No,' then you need not answer this question, but if you have answered question No. 1, 'Yes,' then was such negligence of plaintiff the sole proximate cause of the injury of which he now complains?

"Answer of the jury: No.

"Question No. 3: Do you find from the preponderance of the evidence that the servant or employé of defendant, operating the front motor car on the occasion in question, failed to keep such lookout as a person of ordinary prudence would have kept under the same or similar circumstances?

"Answer of the jury: Yes.

"Question No. 4: If you have answered the foregoing question 'Yes,' then answer this ques-

tion: Was such failure, if any, a proximate cause of plaintiff's injury?

"Answer of the jury: Yes.

"Question No. 5: Do you find from a preponderance of the evidence that the servant or employé of the defendant, operating the front motor car on the occasion in question, failed to use such care to give plaintiff warning of the approach of the motor car as a person of ordinary prudence would have used under the same or similar circumstances?

"Answer of the jury: Yes.

"Question No. 6: If you have answered question No. 5 'Yes,' then answer this question: Was such a failure a proximate cause of plaintiff's injury?

"Answer of the jury: Yes.

"Question No. 7: What amount of money if paid now will reasonably compensate plaintiff for such injuries as you may find from the evidence plaintiff may have received?

"Answering the foregoing question No. 7, you are instructed that in estimating the damage, if any, you should consider the time lost by the plaintiff, if any, as a proximate result of the injury, his decreased capacity to labor and earn money in the future, if any, and the mental and physical suffering endured by him in the past, and the mental and physical suffering that will be endured by him in the future, if any, where these items, if any, are the proximate result of the injury.

"Answer of the jury: $25,000.

"Question No. 8: Was the plaintiff guilty of contributory negligence as that term has been heretofore defined, either in going upon or walking on the passing track under the circumstances and at the time and in the manner in which he did?

"Answer of the jury: Yes.

"If you have answered either question No. 8, or defendant's special requested issue No. 7, or defendant's special requested issue No. 10, 'Yes,' then you need not answer question No. 9. If, however, you answered either question No. 8, or defendant's special requested issue No. 7, or defendant's special issue No. 10, or any or all of them in the affirmative, then you will answer question No. 9.

"Question No. 9: What proportion did plaintiff's negligence bear to the combined negligence of the defendant, if any, and plaintiff?

"Answer: 10 per cent."

Defendant's special requested issue No. 3, and the answer of the jury thereto, are as follows:

"Now comes the defendant and after the refusal of the court to give the peremptory instruction as requested by it, and after the court had overruled the defendant's objection to the main charge of the court, and requests the court to submit the following special issue to the jury:

"Was the passing track of the defendant at or near the place where the plaintiff was struck by the motor car so habitually used by the plaintiff or other employés of the defendant at or about the time of the alleged injury to the plaintiff, that the defendant was put on notice of the fact that said track was being so used, and that the plaintiff or some other employee of the defendant was likely to be upon said passing track at or about the time of the alleged injury to the plaintiff?

"Answer of the jury: Yes."

Defendant's special requested issue No. 5, and the answer of the jury thereto, are as follows:

"Was the plaintiff negligent in going onto and walking upon the passing track and in failing to use one or more of the safe ways open to him as shown by the evidence in this case?

"Answer of the jury: Yes."

Defendant's special requested issue No. 6, and the answer of the jury thereto, are as follows:

"If you have answered special issue No. 5 in the affirmative, you will then answer the following special issue: Was the negligence of the plaintiff in going upon or in walking upon the passing track, or in failing to use one of the other safe ways open to him, as shown by the evidence, the sole proximate cause of the injuries of which he complains?

"Answer of the jury: No."

Defendant's special requested issue No. 7, and the answer of the jury thereto, are as follows:

"If you have answered special issue No. 5 in the affirmative, and have answered special issue No. 6 in the negative, then you will answer the following question: Did the negligence of the plaintiff in going upon, or in walking upon, the passing track, and in failing to use one of the other safe ways open to him, as shown by the evidence, proximately contribute to cause the injuries of which he now complains?

"Answer of the jury: Yes."

Defendant's special requested issue No. 8, and the answer of the jury thereto, are as follows:

"The evidence shows that when the servants or employés of the defendant first saw the plaintiff he was walking along the main track, which the evidence shows was a safe way. With this instruction in mind, you will answer the following special issue: Was the plaintiff negligent in leaving the safe way by which he was going to the eating car and in going upon the passing track, without looking or listening to ascertain whether or not he was going into a place of danger?

"Answer of the jury: Yes."

Defendant's special requested issue No. 9, and the answer of the jury thereto, are as follows:

"If you have answered special issue No. 8 in the affirmative, you will then answer the following special issue: Was the negligence of the plaintiff in leaving said main track and in going upon said passing track without looking or listening to ascertain whether or not he was going into a place of danger, the sole proximate cause of the injuries of which he now complains?

"Answer of the jury: No."

Defendant's special requested issue No. 10, and the answer of the jury thereto, are as follows:

"If you have answered special issue No. 8 in the affirmative, and special issue No. 9 in the negative, then you will answer the following question: Did the negligence of the plaintiff in leaving said main track and in going upon said passing track, without looking or listening to ascertain whether or not he was going into a place of danger, proximately contribute to cause the injuries of which he complains?

"Answer of the jury: Yes."

Defendant's special requested issue No. 11, and the answer of the jury thereto, are as follows:

"Was the servant and employé of the defendant operating the front motor car in possession of sufficient facts from which an ordinarily prudent person, under the same circumstances which surrounded him, would have anticipated or foreseen that the plaintiff would enter upon the track where the motor car was moving, or near enough thereto to occasion the injury complained of, or some other injury?

"Answer of the jury: Yes."

Defendant's special requested issue No. 12, and the answer of the jury thereto, are as follows:

"Was the plaintiff, at the time of the injury complained of, engaged in the performance of any duty to the defendant under the terms of his employment?

"Answer of the jury: Yes."

All the requested special issues of the appellant, as thus given by the court, contained the same introductory recitation as that recited in its No. 3.

Judgment for the appellee in the sum of $22,500 was entered upon the verdict so returned.

[1] Appellant's first complaint here is of the overruling of its application for a continuance below. We think this claim without merit; it is true the application was a first one, but no abuse of discretion in refusing it appears. The sole ground is that appellant was not given sufficient time to investigate the evidence touching the earnings and working habits of the appellee before being required to go into trial, but the suit was filed December 6, 1922, nearly a year after the injury occurred, and appellant, after having been duly cited, appeared and filed its answer on January 2, 1923, the trial not occurring until two weeks later, on January 16th. No reason occurs for holding the refusal in such circumstances to accord a continuance reversible error.

[2] It is next contended that prejudicial error was committed in the receipt of testimony from appellee's sister as to his physical condition after the injury and from the witnesses Keller and Hensley as to his life expectancy, on the ground that no one of these witnesses had qualified as an expert.

The objection is not tenable; the sister saw her brother within 4 days after his injury, no other than the one here involved having occurred in that interim, and nursed him as a professional at that time for several days, returning later for a longer service in that capacity; she had previously had 18 months' professional training as a nurse, and was clearly competent to give the testimony she did about his condition.

[3] Both the witnesses Keller and Hensley had been in the life insurance business for a number of years, and based their testimony about appellee's expectancy solely upon the American Tables of Mortality, which were shown to be the standard tables in use by the old line life insurance companies generally; such testimony was properly received, Railway Company v. Spear (Tex. Civ. App.) 107 S. W. 613; Railway Co. v. Hall (Tex. Civ. App.) 106 S. W. 194; Railway Co. v. Kelly, 34 Tex. Civ. App. 21, 80 S. W. 1073; Chamberlayne on Evidence, vol. 1, §§ 730 and 892.

The fourth and fifth propositions assert that, there being no evidence of any mental suffering upon appellee's part, and an insufficient quantum of it as to his past and probable future earnings, the verdict, which under the court's charge permitting such inclusion, presumptively embraced recoveries on account of both these elements, was excessive and should have been set aside upon the motion for new trial.

[4] We cannot so hold; it is true there was no direct testimony as to any mental suffering eo nomine, but that was not necessary; the appellee's back was broken, there was practically complete nervous breakdown, permanent paralysis, together with many other attending effects, and continuing physical pain; from such conditions the inference of mental suffering was a natural and legitimate conclusion from what was in evidence; it will be implied from the physical pain. Turner v. McKinney (Tex. Civ. App.) 182 S. W. 431; Railway Co. v. Johnson, 43 Tex. Civ. App. 147, 95 S. W. 595.

[5] Neither, we think, was the proof in other respects insufficient to justify the recovery awarded. Appellant makes no question as to the serious permanency of the injury, indeed, could not well do so under the evidence, which undisputedly showed appellee to have been rendered, in all reasonable probability, a permanent invalid; just prior to his injury his life expectancy was 33.92 years, he being then a vigorous, healthy young man, 32 years old, 6 feet tall, weighing 185 pounds, employed as a skilled laborer and earning at his trade $4.64 per day, it further appearing that he had previously earned at it from $6 to $10 per day, and there being nothing inveighing against a reasonable expectation that in the future his capacity might have increased. There was

also an absence of any indication that the jury were influenced by any sort of passion or prejudice.

[6] By means of the sixth, seventh, eighth, ninth, and eleventh propositions it is insisted that the trial court should have instructed a verdict for appellant, the reason assigned being that the undisputed evidence showed a want of care upon appellee's part, furnishing—at least by the preponderating proof—the proximate and sole cause of the accident, and no negligence upon the part of appellant, either primarily or after the alleged discovery of appellee's peril. In this connection it is earnestly argued that appellee was shown to have entered upon the passing track without looking or listening for trains or motor cars, and in so doing abandoned a safe way and chose a dangerous one, without any notice being given to appellant's servants of his intention to make such change, and that but for that action the accident would not have occurred; that no neglect or omission of any sort by appellant's operatives was shown, they having operated the motor car at a moderate speed, keeping the while a reasonable lookout, and immediately after discovering appellee's peril having given him such warning as was then possible and done all in their power to prevent the accident.

But, after a careful review of the statement of facts, we must conclude otherwise and find that there was sufficient evidence to support the verdict in favor of appellee in respect to these matters. The evidence is voluminous, and it is deemed unnecessary to attempt a statement or complete summary of it here; suffice it to say, *there was testimony tending to show that the passing track was generally used for trains meeting each other to pass on, not usually or habitually for the motor cars to bring in crews upon, which was ordinarily done over the main track, and that appellee and other employés had customarily used the passing track in going to and from their meals at the boarding car, there being a path along the center of it, and such use of it being so frequent and general among the employés as to charge appellant with knowledge of and acquiescence in the practice;*[1] that appellee so used it on this occasion, knowing at the time that no trains were then due to pass upon it and having no reason to suspect that the motor cars were either expected or would come in on it, they having on the only two occasions he had gone out on them come in over the main line; that, after he had gotten upon and gone along down the passing track for 40 or 50 yards, the two motor cars joined together with heavy timbers extending from one to the other, the motor on the front one being cut off and that on the back one hitting on only one cylinder, and making very little noise, came up from behind and ran over appellee; that

no warning was given him until the cars were practically right upon him and it was then too late for him to get out of the way, although there was nothing to obstruct the view or prevent those on the motor cars from seeing appellee as he walked up the track, and at least one of them on the front car did see him all the while; that appellee never looked back after stepping on the passing track, but walked along between the rails smoking his pipe, not knowing of the approach of the motor cars, and this one of appellant's servants on the front car watched him all that time until he was hit; that the brakes on the rear car at the time were defective and would not hold; and, finally, that, during the time appellee was walking along the passing track, the operator of the front motor car was looking back to the driver of the back one to determine what he was telling him, while at the same time, under their respective duties, the latter was almost entirely dependent upon the former to keep a lookout, to see that the track was clear, and that they did not run into anything.

In view of this situation, it cannot be successfully contended that appellee was shown to be guilty of and appellant free from the negligence that proximately caused this accident and injury.

[7] Nor can appellant be excused from liability on the claim that appellee at the particular time of its occurrence was not "in the course of his employment" for it, as the twelfth proposition urges; under the facts, he was in our view clearly engaged in the furtherance of the business and affairs of appellant; he was still on its premises, and having merely ceased actual labor on the piece of work he was doing for the noon hour only, was proceeding to the boarding car it had provided for the purpose on another part of the same premises, not only to get his dinner, but also to get some tools from an adjoining sleeping car it had likewise provided, which were necessary to the further continuance of his work after eating. That his injury had to do with and arose out of the work or business of his employer, within the meaning of our law upon the subject, is not, we think, open to serious question. 18 Ruling Case Law, p. 583, § 88, Master and Servant; Lumbermen's Rec. Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76.

[8-10] It is ably urged, under the tenth proposition, that the jury's finding that appellee's negligence contributed only 10 per cent. to the result is against the preponderance of the evidence, which, it is claimed, shows that his negligence in fact contributed more than 50 per cent.; but again we are unable to sustain the view so taken. This phase of the cause comes within the purview of R. S. article 6649, and, as we construe that statute, it confers upon the jury the power

---

[1] See rehearing opinion.

and responsibility of determining the proportion by which the damages are to be diminished in such instances like any other fact issue; that being so, an appellate court cannot set aside a finding upon it, unless it is either without any evidence to support it, or is so against the great weight and preponderance of the evidence as to be clearly wrong; that no such condition obtains here is made clear by preceding recitations of fact, but the liberty is taken of also quoting with approval this recapitulation of the evidence affecting the matter from the appellee's brief:

"The testimony shows that the plaintiff was engaged in the course of his employment while upon the premises of the defendant en route to the boarding car to take his dinner, and to the sleeping car to secure the necessary tools to renew the labor which he had been directed to perform by the master. The boarding car in question was maintained on the premises of the appellant, and the pay for his board was by the appellant deducted from the wage daily earned by him. He was proceeding along a path on the track which was usually and customarily used by the employés for the purpose of going to and returning from the cars.

"The evidence further shows that while in progress to his destination he was seen in this position at a distance of more than 200 yards from the point of collision; that the operators of the car that caused his injury could have seen him in time to have averted the accident but for the fact that the driver of the first car, whose duty it was to maintain a lookout, was looking back and not undertaking to see that the right of way was cleared in his advance up the track; that the power of the cars was practically cut off; that only one cylinder of the four in the motive power on the two cars was running; that the exhaust from the engine was the only means of warning upon the cars; and that the cars approached the plaintiff in practically a noiseless manner."

[11-13] None of the three further presentments involve reversible error; no bills of exception are shown to have been taken to the action challenged under the first two of them; but, if that were overlooked, still no prejudicial effect appears; the averments of appellee's petition with reference to the two cars being operated together as one and the shutting off of the power therefrom as causing a noiseless approach constituted relevant elaboration of the general allegations of negligence, and there was no error in the court's refusal to strike them out; a like conclusion applies to the receipt of the evidence as to defective brakes on the rear car.

[14, 15] The remarks of appellee's attorney to the jury that "as a matter of law, as well as of fact, the plaintiff was acting within the course of his employment," on objection, and before the court ruled upon it, was withdrawn by the attorney himself, and he then proceeded to tell the jury they should be controlled as to the law by the court's charge and not by any statement of counsel; no written request was made for the court to instruct the jury not to consider the statement, nor did the court refuse to so instruct, but rather understood it to have been fully withdrawn by the counsel who made it, and the incident ended. The withdrawal of an improper argument, in the absence of anything tending to indicate (as was the case in this instance) that the verdict was influenced by it, notwithstanding the withdrawal, ordinarily removes any harmful effect. Independently, however, we think this remark, while an indiscretion upon the attorney's part even though embodying what we have held was the law on the subject, since the jury should always understand that they must receive all instructions concerning the law from the court alone, really carried no materially injurious effect, because they had already been instructed to be governed by the charge as to the law applicable to the facts, and on this feature directed merely to find whether or not appellee was engaged at the time in the performance of any duty due to appellant under the terms of his employment.

These conclusions determine the merits of the appeal; from them it follows that the trial court's judgment should be affirmed; that order has accordingly been entered.

Affirmed.

### On Rehearing.

Appellant's motion for rehearing calls our attention to a slight inaccuracy in the verbiage of the following portion [there italicized] of a sentence beginning on page 12 of our original opinion [see 262 S. W. 928]:

"There was testimony tending to show that the passing track was generally used for trains meeting each other to pass on, not usually or habitually for the motor cars to bring in crews upon; which was ordinarily done over the main track, and that appellee and other employés had customarily used the passing track in going to and from their meals at the boarding car, there being a path along the center of it, and such use of it being so frequent and general among the employés as to charge appellant with knowledge of and acquiescence in the practice."

It should have read:

There was testimony tending to show that the passing track was generally used for trains meeting each other to pass on, not usually or habitually for the motor cars to bring in crews upon, that that was ordinarily done over the main track, and that appellee and other employés had customarily used the passing track in going to and from their meals at the boarding car, there being a path along the center of it, and that such use of it was so frequent and general among the employés as to charge appellant with knowledge of and acquiescence in the practice.

We have re-examined the statement of facts and find this corrected recitation to be fully sustained by the testimony.

In other respects also the motion has been carefully considered, but we are not convinced of error in our original disposition of the cause; a rehearing has therefore been refused.