LUMBERMAN'S RECIPROCAL ASSOCIATION v. MRS. JOSIE BEHNKEN ET AL.

No. 3562.   Decided November 29, 1922.

(246 S. W., 72.)

1.—Master and Servant—Workmen's Compensation Law—Injury in Course of Employment.

An "injury sustained in the course of employment" within the meaning of the Workmen's Compensation Law (Vernon's Ann. Civ. Stats., Supp., 1918, art. 5246, 1 to 91) is not necessarily, though usually, one sustained on the premises of the employer or during the hours of active labor. It is sufficient that it results from a risk necessarily, or ordinarily, or reasonably inherent in or incident to the conduct of such work.   (pp. 110, 111).

2.—Same—Going to or Returning from Work.

Though injuries received in going to or returning from work, not on the employer's premises or from causes controlled by him, such as being run over by trains or vehicles, are not ordinarily risks incident to the employment, they become so when occurring at a place furnished by the employer, in the interest of his business, as the necessary and immediate means of access to the place of labor, from a danger caused by the permanent condition of such place, and at a time when the employee is expected or required to enter the plant. (p. 111).

3.—Same—Case Stated.

The plant of a lumber company, situated on a railway and comprising the entire town there, embraced dwellings rented to its white employees, including deceased, situated on the side of the track opposite to the shops where he worked, access thereto being by a single crossing over the tracks. The em-

ployee, returning from dinner at his home to resume work, was struck and killed by a railway train at this crossing. *Held,* that his injury was sustained in furtherance of the business of his employer; that the crossing should be treated as a part of the employer's premises; and that the widow and children were entitled to recover for his death under the Workmen's Compensation Law. (pp. 108-115).

**4.—Industrial Accident Board—Compensation—Lump Sum.**

A claim for compensation by the family of deceased having been denied by the Industrial Accident Board, the District Court had power to determine the issues between the parties and award a lump sum in lieu of weekly payments, regardless of whether a claim for a lump sum had been asserted before the Board. (pp. 114, 115).

**5.—Damages—Aggregating Weekly Payments.**

The action of the trial court in awarding a lump sum assessed in lieu of weekly payments to the family of deceased will be presumed to be arrived at upon evidence warranting it, and in the absence of evidence will not be revised by the Supreme Court. (p. 115).

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Mrs. Behnken, for herself and four minor children, sued the Lumberman's Reciprocal Association, which had in effect a policy of insurance under the Workman's Compensation Law protecting her deceased husband and his beneficiaries along with other employees of the Hartman Lumber Company. The husband had been killed by accident while in its employ. The claim was submitted to the Industrial Accident Board and disallowed by them. Claimant gave due notice of refusal to abide by this award and brought suit in the District Court. Plaintiff had judgment there which was affirmed by the Court of Civil Appeals. Appellant, defendant below, thereupon obtained writ of error.

*Andrews, Streetman, Logue & Mobley (E. J. Fountain Jr.* of counsel) for plaintiff in error.

Since it does not appear that at the time of the injury involved herein, the deceased employee was engaged in or about the furtherance of the affairs or business of the employer, the injury was not received in the course of the employment of the deceased.

(a) Statute: Workmen's Compensation Law, 1917 Part IV, Section I; General Laws, 35th Legislature, page 292.

(b) Texas cases: American Indemnity Co. v. Dinkins, 211 S. W., 949; Employers' Indemnity Corp. v. Kirkpatrick, 214 S. W., 956; Southern Surety Co. v. Stubbs, 199 S. W., 343.

(c) Cases from other jurisdictions:

(1) Those finding injuries not to have arisen "in the course of and out of the employment:" Hills v. Blair, 148 N. W., (Mich.) 243; Leveroni v. Travelers' Ins. Co., 107 N. E., (Mass.), 349; Erickson v.

St. Paul City R. Co., 169 N. W. (Minn.), 532; McInerney v. B. S. R. Co., 121 N. E. (N. Y.), 806; De Voe v. N. Y. State Rys., 113 N. E. (N. Y.), 256; Pierson v. Interborough R. T. Co., 172 N. Y. S., 182; Federal Rubber Mfg. Co. v. Havolic, 156 N. W. (Wisc.), 143; International Harvester Co. v. Board, 118 N. E., 711; Re Betts, 118 N. E. (Ind,), 551; Murphy v. Steel Co., 169 N. Y. S., 781; Pishe v. Brooklyn Cooperage Co., 78 So. (La.), 734; Walters v. Stanley C. & I. Co., 4 B. W. C. C., 303; Guastelo v. Mich. C. R. R. Co., 160 N. W. (Mich.), 484; Ocean A. & G. Co. v. Ind. Com., 159 Col., 1041; Griffith v. Cole Bros., 165 N. W., 577; Rockford's Case, 124 N. E. (Mass.), 891; Nelson R. Const. Co. v. Ind. Com., 122 N. E. (Ill.), 113; Borck v. Murphy Co., 171 N. W. (Mich.), 470; Arizona Eastern R. Co. v. Matthews, 180 Pac. (Ariz.), 159; Manor v. Pennington, 167 N. Y. S., 424; Inland Steel Co. v. Lambert, 118 N. E. (Ind.), 162; Ind. Com. v. Andreson, 169 Pac. (Cal.) 135; Urban v. Topping Bros., 172 N. Y. S., 432; Pierson v. I. R. T. Co., 172 N. Y. S., 182.

(2)  Those finding injuries to have arisen "in the course of and out of the employment:" Re McNicol, 102 N. E. (Mass.), 697; Re Stacy, 114 N. E. (Mass.), 206; Re O'Brien, 117 N. E. (Mass.), 619; Re Sundine, 105 N. E. (Mass.), 433; Terlehi v. Strauss, 89 Atl., (N. J.), 1023; Rish v. Cement Co., 170 N. W. (Iowa), 532; Merlino v. Connecticut Quarries Co., 104 Atl. (Conn.), 396; Sedlock v. Carr Coal M. & M. C., 159 Pac. (Kan.), 9; Milwaukee Coal & Gas Co., v. Ins. Com. 151 N. W. (Wis.), 245; Starr Piano Co. v. Commission, 184 Pac. (Cal.) 800; Great Lake, etc. Co. v. Totzle, 121 N. E. (Ind.), 675; Hallett's case, 121 N. E. (Mass.), 503, 119 N. E. 673; Scully v. Ind. Com., 120 N. E. (Ill.), 492; Re Donovan, 104 N. E. (Mass.), 431.

(d)  Text and articles: Article by Francis H. Bohlen, "The Drafting of Workmen's Compensation Acts," 25 Harvard Law Review, 328, 401, 517; Corpus Juris (Pamphlet "Workmen's Compensation Acts.") Secs. 68-75; 1 Bradury on Workmen's Compensation (2 Ed.), 404; Boyd on Workmen's Compensation, sec. 486; Ruegg on Workmen's Compensation, p. 82; Harper on Workmen's Compensation, secs. 32-34; Dosker's Manuel of Compensation Law, chap. III, p. 89; especially sec. 104; Honold on Workmen's Compensation Law, pp. 167 and 346; Note, L. R. A. 1917, D, p. 114, et seq.; Note, L. R. A. 1916, A, pp. 40 et seq. and 232 et seq.

(e)  Burden of proof is upon the claimant to show that the injury resulted from an accident received in the course of the employment of the deceased: Sugar Valley Coal Co. v. Drake, 117 N. E. (Ind.), 937; Inland Steel Co. v. Lambert, 118 N. E. (Ind.), 162; Raeblings Sons Co. v. Ind. Acc. Com., 171 Pac. (Calif.), 987; Pishe v. Brooklyn Cooperage Co., 78 So. (La.), 734; Wisconsin Steel Co. v. Ind. Com. 123 N. E. (Ill.), 295; Miphow, etc. Co. v. Ind. Com., 124 N. E. (Ill.), 540.

The Trial Court erred, to the prejudice of the defendant, in de-

creeing that the plaintiffs take the compensation in a lump sum, because no claim was ever made for a lump sum before the Industrial Accident Board, but was first made in the trial court, and since this was an appeal from the award of the Industrial Accident Board the Trial Court only had jurisdiction to determine such matters as were passed on by the Board.

(a)  Sections of Statute: Workmen's Compensation Law, 1917, part I, sec. 15 (p. 280 Gen. Laws, 1917) (Lump Sums in special cases in judgment of Board); Workmen's Compensation Law 1917, part II, sec. 5 (p. 283, Gen. Laws, 1917) (Provisions for appeal to courts.)

(b)  Comparing appeals from Industrial Accident Board to Courts to appeals from Justice to County Courts: Georgia Casualty Co. v. Griesenbeck, 210 S. W., 273; U. S. F. & G. Co. v. Lowry, 219 S. W., 222.   . . .

(c)  On appeal from Justice to County Court the County Court has only jurisdiction to determine causes of action set up in the Justice Court: Article 759, Vernon's Sayles' Revised Civil Statutes; Barrett v. Habern, 54 S. W., 644; Williams v. Houston Cornice Works, 101 S. W., 839, 1195; McSpadden v. Eads, 163 S. W., 634.

The Trial Court erred, to the prejudice of the defendant, in decreeing that compensation be paid to the plaintiff in a lump sum, because such decree is contrary to the manifest intention of the Workmen's Compensation Law, namely, that compensation be paid on a weekly basis.   Sec. 15, part I, Workmen's Compensation Law, 1917; Workmen's Compensation Acts (Corpus Juris Pamphlet) par. 98; Note, L. R. A., 1916A, 262 et seq.; Texas Emp. Ins. Ass. v. Boudreaux, 213 S. W., 674.

The judgment of the court is unjust to the defendant and excessive in amount for that the defendant, being compelled to commute the weekly payments of compensation into a lump sum payable now, was entitled to a reasonable rate of discount, and the amount of recovery awarded by the court allows the defendant only a five per cent discount, when the legal rate of interest in this State is six per cent, and there was no evidence that the prevailing rate is less than the legal rate, so that the court should have allowed the defendant a discount of six per cent, the legal rate, and the judgment to the extent of the difference between a discount of five per cent and six per cent is excessive.

(a) In coerced lump sum payments, the association is entitled to a discount so as that present value, as against future value of unmatured payments will be paid:  Workmen's Compensation Act, 1917, sec. 15, part 1, sec. 15a, part 1, sec. 18, part 1; Corpus Juris (Workmen's Compensation Pamphlet), sec. 98; Banister Co. v. Krizer, 85 Atl. (N. J.), 1027.

(b) Six per cent is the proper rate of discount: Title 72, Article 4974 to 4978, inclusive, Vernon's Sayles' Revised Civil Statutes, 1914.

There being no evidence to show the value of money in Texas or in this vicinity, presumptively the legal rate of interest applies.

*Jas. A. Harrison,* for defendant in error.

L. Behnken having been killed while on the premises of his Master, at the noon hour, when proceeding from his lunch to his work, by an object to which he was necessarily exposed and which created a hazard to which he was necessarily exposed by the conditions and environments of his work and employment, such injury was received by him in the course of his employment. Carter v. Rowe, 101 Atl., 491; In Re O'Brien, 117 N. E. 619; Holland v. Straluka, 116 N. E. 331; In Re Stacy, 114 N. E., 207; Kimbol v. Accident Board, 160 Pac., 150; Nelson Construction Company v. Industrial Com. of Ill., 122 N. E., 113; De Constantin v. Commission, 83 S. E., 88; Zabriskie v. Railroad Co., 92 Atl., 385; Milwaukee Fuel Co. v. Commission, 150 N. W., 998; Frankfort v. Pillsbery, 159 Pac., 150; Robins v. Engine Company, 167 N. W., 437; Andrew Jeskie v. Wolverine, 148 N. W., 684; Re Sundine, 105 N. E., 433; Honnold's Workmen's Compensation, Volume 1, par. 111; Corpus Juris Pamphlet on Workmen's Compensation, Articles 72, 74, 76.

The Industrial Accident Board is not a court; neither can it be considered an appeal when a party who is dissatisfied with an award made by the Board takes the matter into the courts. The Industrial Accident Board merely is an administrative body which makes its own rules of procedure and is not governed by either the rules of pleading or evidence as administered in the courts and its judgment or award cannot be used as evidence when the matter is taken into the courts and tried there. All that is required in the way of pleadings before the Accident Board is that the complaining party make claim for compensation. And that is all that is usually done. It is not usual that a claim for a lump sum settlement is made before the Industrial Accident Board until after that body has awarded compensation. Employers' Liability Act of 1917, part 2, secs. 1, 2, 4, 4a, 5, 5a, and 10.

The Workmen's Compensation Law expressly authorizes that an insurer may be compelled to redeem its Liability in a lump sum. If the court's action in decreeing a lump sum settlement can be reviewed at all it can only be done when there has been an abuse of discretion by the lower court. This court will judicially know that under the present high cost of living the weekly payments which would have been received by Mrs. Behnken and children are entirely inadequate to support them. Texas Employer's Ins. Assn. v. Boudreaux, 213 S. W., 674; Winneman v. Industrial Com., 176 N. W., 809.

The Workmen's Compensation Law of Texas does not provide that a discount shall be allowed when the liability of insurer is redeemed in

a lump sum settlement. There can be no question that the Legislature had the right to require the payment of the full sum without any discount. Since the Legislature did not provide for any discount it is reasonable to conclude that they did not intend that the amount of the award should be discounted in a lump sum settlement. If this position is correct the action of the court in discounting the amount of the award five per cent cannot be complained of by appellant. If appellant under the law is entitled to a discount, then if the discount fixed by the court is not an abuse of discretion its action should be affirmed. The court certainly is not required to allow discount at six per cent.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This case was tried on an agreed statement of facts which may be summarized, for the purposes of this opinion, as follows:

The Hartburg Lumber Company, on June 5, 1919, operated a sawmill at Hartburg, Texas, employing about seventy-five men, including L. Behnken, and carried an insurance policy obligating plaintiff in error to pay the compensation provided by the Texas Workmen's Compensation Act for the death of any employee of the Company.

The town consisted entirely of the Hartburg Lumber Company's plant, including its mill, planer, storehouse, office, and the boarding house and residences for its employees. The railroad track of the Kansas City Southern Railway Company ran through Hartburg, so that the mill, planer, storehouse, boarding house and some residences for negro and Mexican employees were on the North side of the track, while the residences for the white employees were on the South side. A public road running from the town of Lemonville to the town of Ruliff was on the South side of the railroad track, in front of the residences for white employees. These residences belonged to the company and were rented for cash by the month.

There is a crossing from the public road over the railroad track, leading to the various buildings North of the track on the property of the Hartburg Lumber Company. The railroad track is not fenced. The crossing above mentioned is the only well defined crossing over the railroad track. It was used by any member of the public desiring to go to any part of the Company's mill, store, or boarding house.

The employees of the Hartburg Lumber Company customarily went for meals to their rented homes or to the boarding house. The white employees, who occupied the residences South of the railroad, including L. Behnken, went for their meals, at noon, to their respective residences, and in so doing necessarily crossed the railroad track.

The Lumber Company's buildings, the railroad track, the public road, and the railroad crossing are accurately delineated on the following map, viz:

EXHIBIT "A"

PLANER

N<———

MILL

STORE

ROAD BRANCHES
AND GOES TO
VARIOUS PARTS OF
PLANT ——>

BOARDING
HOUSE

NEGRO QUARTERS

KANSAS CITY SOUTHERN R. R.

TO RULIFF

PUBLIC ROAD

PLACE OF ACCIDENT

TO LEMONVILLE

WHITE PEOPLE'S HOUSES

DECEASED'S
HOUSE ——>

On June 5, 1919, L. Behnken quit work at noon, went home and ate dinner, and started back at the usual time to his work where he was due at one o'clock. While on the crossing, he was accidentally struck and killed by a train operated over the Kansas City Southern Railway Company's track. The train did not stop at Hartburg and had nothing to do with the business of the Hartburg Lumber Company.

The wages which Behnken was earning were agreed to, as was the *status* of defendants in error as his dependent widow and children.

Immediate notice was given of Behnken's injury and death; and, the claim of defendants in error for compensation was filed within the statutory time.

The Industrial Accident Board rejected the claim, concluding that the injuries which caused the death of the deceased were not sustained in the course of his employment with the Hartburg Lumber Company.

This suit was brought by defendants in error against plaintiff in error to set aside the final ruling and decision of the Board, and to recover compensation for Behnken's death. It resulted in a judgment for defendants in error in the lump sum of $3833, which was affirmed by the Galveston Court of Civil Appeals, 226 S. W., 154.

The Workmen's Compensation Law provides for compensation for the death of an employee from "an injury sustained in the course of his employment," and declares that "all other injuries of every kind and character," except certain enumerated injuries from causes or under conditions quite different from any attending the injury to Behnken, shall be included within the term "injury sustained in the course of employment," when "having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer whether upon the employer's premises or elsewhere." Articles 5246-5, 5246-52, Vernon's Sayles' Texas Civil Statutes, 1918 Supplement.

The principal contention of plaintiff in error is that Behnken's injury did not have to do with and originate in the work or business of his employer, and that Behnken was not engaged at the time of injury in or about the furtherance of the affairs or business of his employer, and that hence the injury was not received in the course of Behnken's employment.

An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: "What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task." Pace v. Appanoose County, 184 Iowa, 498, 168 N. W., 918.

Though injuries arising from risks incidental to employment most

frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circumscribed either as to time or place. International & G. N. Ry. Co. v. Ryan, 82 Texas, 571, 18 S. W., 219; Houston E. & W. T. Ry. Co. v. McHale, 47 Texas Civ. App., 360, 105 S. W., 1151; Latter's Case, 238 Mass. 326, 130 N. E., 638. Our statute declares that it is not necessary to fix liability that the injury be sustained on the employee's premises.

In Latter's Case, *supra,* the injury occurred shortly before the time to begin the employee's labor. The injury was not sustained on the employer's premises but in an elevator controlled and operated by his landlord. By permission of both the landlord and the employer the elevator was used as a customary means of access to the employer's premises. It was rightly determined that the employee's right to use the elevator was derived from his employment and that the risk arising from such use was incident to the employment.

So, in every case, where injury occurs at a place furnished by the employer, in the interest of his business, as the necessary and immediate means of access to where the employee is required to labor, from a danger caused by the permanent condition of such place, and at a time when the employee is expected or required to enter the plant, the injury is as truly the result of a risk incident to the employment as though happening within the plant where the employee does his regular work, and during the hours for such work.

Honnold states in his work on Workmen's Compensation, Vol. 1, section 122, page 453; "Where the injury has arisen through the workmen using special modes of access provided by their employers to enable them to go to or come from the actual place of employment, the courts have uniformly held that it arose out of the employment."

The rule is well illustrated by the case of Zabriskie, who was struck by an automobile on a principal street in the city of Paterson and thrown on a railroad track where he was again struck by a railroad train. He was going from where he was employed to a toilet, intending to return from the toilet to resume his work. The toilet was habitually used by employees with the employer's acquiescence. In holding that Zabriskie's injury arose out of his employment, the New Jersey Court of Appeals and Errors, referring to the danger to Zabriskie in the use of the street, said: "It was not the danger of an ordinary member of the public crossing the street on his own business, but was the subjection of the employee to that danger by the conditions of his employment. The fact that the accident may have been, and probably was, due to the negligence of the driver of the automobile, and perhaps also to the contributory negligence of the deceased, tends to cloud the issue, but does not differentiate the situation from that of any workman who is required in the performance of his work to go into a dangerous place and incur the dangers connected with that place." Zabriskie v. Erie Railroad Co., 86 N. J. L., 226, 92 Atl., 385, L. R. A., 1916A, 317.

The crossing in this case bore so intimate a relation to the Lumber Company's premises that it can hardly be treated otherwise than as a part of the premises. The Lumber Company had rights in and to the crossing. It seems to have had no other purpose than to further the Company's business. It appears to have been used only in connection with that business, whether by employees or other persons. Hence, the risk incurred by Behnken was one entirely foreign to all that portion of the public having no business on or about the Lumber Company's premises. Under these facts, it is plain that Behnken's injury had to do with, and originated in, the business of his employer, since the conditions of the employment necessarily and constantly subjected him to special danger inseparable from the regular movement over the crossing of railroad engines and cars, regardless of whether operated by his employer or by another. Larke v. John Hancock Mut. Life Ins. Co., 90 Conn., 303, L. R. A., 1916E, 584, 97 Atl., 322; Myers v. Louisana Ry. & Nav. Co., 140 La., 837, 74 So., 259; In Re Stacy, 225 Mass., 174, 114 N. E., 207; 25 Harvard Law Review, 412.

Was Behnken engaged in or about the furtherance of the affairs or business of his employer when he received the injury causing his death? He was upon the crossing provided as the means of access to his work solely because he was an employee. He encountered the dangers incident to use of the crossing in order that he might perform the duties imposed by his contract of service. Without subjecting himself to such dangers he could not do what was required of him in the conduct of the Lumber Company's business. He had reached a place provided and used only as an adjunct to that business, and was injured from a risk created by the conditions under which the business was carried on. To hold that he was not acting in furtherance of the affairs or business of the Lumber Company would be to give a strict interpretation to this remedial statute, which should be liberally construed with a view to accomplish its purpose and to promote justice.

The injury to Behnken comes within recognized exceptions to the general rule, refusing compensation to employees for injuries sustained on the way to or from work, under acts providing compensation for injuries received in the course of employment.

The Corpus Juris Treatise on Workmen's Compensation Acts, at page 84, section 75d, says: "As a general rule accidents which happen to an employee on his way to and from work are not regarded as in the course of his employment, except while he is at or so near the place of employment as reasonably to be regarded as in effect at the place, or where, if not on the employer's premises, he is at or near the place of work and on a road or other way intended by the contract of employment as being the means of access to the work."

The facts of this case are similar in all material respects to the facts

in the case of Judson Mfg. Co. v. Industrial Accident Commission, 181 Calif., 300, 184 Pac., 1. There one Gallia was struck and killed by an engine operated by the Southern Pacific Company on a crossing over that Company's tracks in San Francisco, which crossing was the authorized means of access to the factory of Gallia's employer, the Judson Manufacturing Company. Gallia was on the way to his work. He was injured about twenty feet outside the factory gate, and about five minutes before the time for him to begin active work. It was essential to liability under the California Act that Gallia, when injured, was "performing service growing out of and incidental to his employment" and was "acting within the course of his employment." In declaring that compensation should be made under the Act for Gallia's death, the Supreme Court of California said: "It seems to us, however, that when an employee has arrived at the premises of his employer, and is thereon for the purpose of immediately commencing his actual work, he is performing service incidental to his employment. The facts stated above show that as between the employer and his employees the path across the Southern Pacific Company's right of way was in fact a part of the employer's plant, and that at the time of his death Gallia was there solely in the line of his duty as an employee. It would be a harsh and indefensible rule that would withhold compensation from an employee engaged in traversing a dangerous pathway in his employer's building on his way to his own particular place of work therein, on the ground that he had not yet entered upon the real work of his employment. We can perceive no difference in principle between such a case and the case at bar."

The holding of the Supreme Court of Errors of Connecticut, in the case of Procaccino v. E. Horton & Sons, 95 Conn., 408, 111 Atl., 595, 596, applies with full force to this case. In the opinion in Procaccino's case, the court said: "We hold that the decedent at the time of his injury was using a way of approach over private property from a highway to the defendants' plant, which way of approach the defendants in their employment of the decedent contemplated that he should use, and that the decedent in such use of the way was, after he left the highway, in the course of his employment, and that the injury arose out of a danger incident to his employment." The court had previously said: "When this employee, under the facts found, entered upon the private property lying between Main street and the defendants' plant, he came within the zone of his employment, and all dangers and perils incident to the use of this method of approach were perils incident to and arising out of his employment."

There is no conflict between this opinion and our action in refusing a writ of error in the case of American Indemnity Co. v. Dinkins, 211 S. W., 954.

112 Tex.—8

The Court of Civil Appeals, in announcing its decision in the Dinkins case, quoted a declaration from the opinion of the Supreme Court of California, in Ocean Accident & Guaranty Co. v. Industrial Accident Commission, 173 Cal., 317, 159 Pac., 1042; L. R. A., 1917B, 336, to the effect that all accidental injuries were excluded from the benefits of the Compensation Act of California where such injuries occurred while the employees were going to or returning from their work over the public roads or private ways. It is to be noted, however, that the Court of Civil Appeals was careful to say that the quotation was used merely by way of argument as to the probable intent of workmen's compensation acts of other states. The quoted declaration was criticised by the Supreme Court of California in Judson Mfg. Co. v. Industrial Accident Commission, *supra,* in the following language: ''This sweeping dictum was not necessary to the decision of the case. The accident there considered occurred, it is true, while the deceased was attempting to reach his place of employment; but the mode of ingress which he undertook to use was not one provided and required by his employer, it was in no sense a part of the premises where his work was to be performed, and finally, it was not in fact a mode of ingress to his work at all.''

Dinkins received his injury in a collision with an automobile. He was returning from work. The automobile was driven by a co-employee returning to work. The collision occurred on one of the public streets of Beaumont three-fourths of a mile from the employer's plant. This court, by refusing the writ of error, approved the conclusion that the injury to Dinkins was not sustained in the course of his employment.

Tested by the rules herein announced, the same result would be reached. Dinkins' right to use the street was not derived from his employment. The injury occurred at a place provided by the City for public use and not at a place furnished by Dinkins' employer, as a special mode of access to his work. The danger to Dinkins was one to which each member of the public was alike exposed. He was himself as much exposed to the danger when traversing the street on purely private business as when hurt. Dinkins' injury did not result from risk or hazard incident to the conduct of his employer's business. His injury did not arise out of the business. That conclusion accords with the weight of authority, American and British, as do our conclusions herein. Corpus Juris Treatise on Workmen's Compensation Acts, p. 78, sec. 68e; Starr Piano Co. v. Industrial Accident Commission, 181 Cal. 433, 184 Pac., 860; In Re Sundine, 218 Mass., 1; 105 N. E., 435; L. R. A. 1916A, 318; Fumiciello's Case, 219 Mass., 488, 107 N. E., 349; Edwards v. Wingham, 3 K. B. (Eng.) 596; 109 L. T. N. S., 50, 6 B. W. C. A., 511; Amys v. Barton (1912), 1 K. B. (Eng.), 41.

After the claim of defendants in error was denied by the Industrial Accident Board, the District Court had jurisdiction to deter-

mine all issues between the parties regardless of whether defendants in error's right to lump sum compensation had been asserted before the Board. In so holding, the Court of Civil Appeals followed the plain letter and intent of the statute.

In the absence of evidence, we will not undertake to review the rate of discount from the aggregate of the weekly payments, which was allowed in arriving at the lump sum awarded defendants in error. The statute contemplated that the court fix the present value of the weekly installments prescribed by the Act. It will be presumed that the evidence warranted the trial court's judgment.

Finding no error, it is ordered that the judgments of the District Court and of the Court of Civil Appeals be affirmed.

*Affirmed.*