### BURNETT v. ÆTNA LIFE INS. CO.
### (No. 1236.)

(Court of Civil Appeals of Texas. Beaumont. May 13, 1925. Rehearing Denied May 27, 1925.)

**Master and servant ⬤375(I)—Injury to salesman in removing shotgun from automobile, while traveling to call on customer, held compensable as "having to do with and originating in work of employer."**

Injury to salesman by discharge of shotgun, in removing it from his moving car to facilitate travel in calling on a customer, was compensable as an injury "having to do with and originating in the work of his employer," under Vernon's Ann. Civ. St. Supp. 1918, art. 5246.

Appeal from District Court, Anderson County; Ben F. Dent, Judge.

Suit by J. T. Burnett against the Ætna Life Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

J. D. Pickett, of Palestine, for appellant.
Lawther, Pope, Leachman & Lawther and Neth L. Leachman, all of Dallas, for appellee.

WALKER, J. The nature and result and facts of this suit are sufficiently given in the trial court's conclusions of law and fact, which are as follows:

"(1) That on the 9th day of September, 1922, the Calumet Baking Powder Company, a foreign corporation, had a permit to do business in the state of Texas, and was engaged in selling baking powders to wholesale and retail dealers in such products in the state of Texas. That the Calumet Baking Powder Company on that date had more than three employees working for it in the state of Texas, and was a subscriber under the Employers' Liability and Workmen's Compensation Law of Texas, and on that date carried a policy of insurance under said law with the Ætna Life Insurance Company, defendant.

"(2) That on the 9th day of September, 1922, and prior thereto, J. T. Burnett, plaintiff, was in the employ of the Calumet Baking Powder Company, and as such employee was covered by said policy of insurance against personal injury and injuries resulting in death, if sustained in the course of his employment with the Calumet Baking Powder Company.

"(3) That on the 9th day of September, 1922, and prior thereto, the Calumet Baking Powder Company had the legal right to insure its employees under the Employers' Liability and Workmen's Compensation Law of Texas; and the Ætna Life Insurance Company, defendant, had the authority to write insurance under the Employers' Liability and Workmen's Compensation Law of Texas, and to issue policies therefor.

"(4) That on the 9th day of September, 1922, the Calumet Baking Powder Company carried a policy of insurance issued by the Ætna Life Insurance Company under the Employers' Liability and Workmen's Compensation Law of Texas, insuring its employees in Texas, including J. T. Burnett, plaintiff, against personal injuries, and injuries resulting in death, if sustained in the course of his employment with the Calumet Baking Powder Company; and that said policy of insurance against such injuries, if any, were sustained by the plaintiff, J. T. Burnett, was legal, valid, and in force on the 9th day of September, 1922.

"(5) That on the 9th day of September, 1922, the average weekly wages of the plaintiff J. T. Burnett was the sum of $55.

"(6) That on the 9th day of September, 1922, and prior thereto, J. T. Burnett was in the employ of the Calumet Baking Powder Company in the state of Texas as a traveling salesman, and was engaged in traveling over a designated territory in Texas, which included the city of Palestine in Anderson county, Tex., selling baking powders made by his employer to the wholesale and retail dealers in baking powder in said territory. That under such contract of employment it was the duty of J. T. Burnett to go from town to town in his territory and to take orders from the dealers in baking powders for his employer. That in the transaction of said business J. T. Burnett was authorized to use his private automobile as a means of transportation, and was allowed, for the use of said car, the sum of $5 per day, for each day that his car was so used in the prosecution of his employer's business.

"(7) That on the 9th day of September, 1922, the plaintiff J. T. Burnett, being in the city of Palestine for the purpose of calling on the dealers in said city and taking orders for baking powders, and generally looking after the business of the Calumet Baking Powder Company in the city of Palestine, at an early hour, and before the hour of beginning his work as a salesman, took his shotgun in his automobile and went to the country to shoot some doves. That he returned to the city about 8 o'clock, and immediately began calling on the dealers in baking powder in said city, in the usual course of his employment, carrying the shotgun in the back part of his automobile. That he continued in the pursuit of such employment, at the same time carrying the gun about town in the back of his car, until the noon hour. That plaintiff at that time resided in the city of Palestine, and he drove to his home for lunch, and, put the car containing the gun in his garage at his home.

"(8) That on the 9th day of September, 1922, plaintiff had orders from his employer to finish canvassing the city of Palestine and to take the afternoon train out for the city of San Antonio, where, on the following day, he was to

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

begin work in that territory for the same employer. That the afternoon train from Palestine to San Antonio was to leave said city at about 1:30 p. m., but said train was not on time, and was running a few minutes late. That after the plaintiff had eaten his lunch it was necessary, under his orders, and for the closing up of his employer's business in Palestine, for him to call on the Moore Wholesale Grocery Company in said city before leaving for San Antonio. That after plaintiff had eaten his lunch he packed his traveling bags preparatory to his journey to San Antonio, and left his traveling bags in the living room of his home, with instructions to his wife to deliver them to him in front of the house when he should drive around to the front, after getting his car out of the garage. That plaintiff went to the garage, got in his car, forgetting that his gun was still in the automobile, put the car in motion, and was leaving the garage when he discovered his shotgun still in the car. That he stepped on the running board of the car, caught the barrel of the gun with his left hand, intending to leave the same in the garage. and that, while so holding said gun, the car being in motion at the same time, said gun was discharged, resulting in an injury to his left hand, which necessitated the amputation thereof at the wrist.

"(9) That at the time plaintiff received the injury he was in his car and on his way to call upon the Moore Wholesale Grocery Company, in the city of Palestine, in the usual course of his employment to solicit an order from said company for baking powders in the furtherance of his employer's business.

"(10) That at the time such injuries were received it was not the intention of plaintiff to return to his home after he had called upon the Moore Wholesale Grocery Company, but that it was his purpose to go to the Moore Wholesale Grocery Company, and after his business had been transacted to go in his car to the station and there take the train for San Antonio. That at the time he received said injuries plaintiff was actually on his journey to the Moore Wholesale Grocery Company.

"(11) That plaintiff's purpose in removing said gun was to leave the same in his garage, so that he could more safely travel in said car. That the removal of said gun would facilitate the transaction of his employer's business by enabling him to travel more safely and conveniently.

"(12) I find that the proximate cause of the injury was that plaintiff was thrown off his balance by the motion of the car, and the gun was thereby caused to be fired accidentally.

"(13) I find that the injury to plaintiff was received while engaged in or about the furtherance of the business of his employer, but that said injury did not originate in and have to do with the business or work of the employer.

"(14) I find that the reasonable cost of medical attention for the plaintiff during the two weeks immediately following the injury was the sum of $230; that plaintiff paid said sum of money and has never been reimbursed therefor; that on the day of the injury plaintiff notified his employer that immediate medical attention was necessary for the proper treatment of the wound; that neither the subscriber nor the defendant at any time furnished to plaintiff any medical aid; that the expenses incurred by plaintiff in the treatment of his injury for the first week after he was injured was the sum of $195; that such expense was reasonable, and was paid by plaintiff, and plaintiff has never been reimbursed therefor.

"(15) I find that plaintiff, on the 9th day of September, 1922, gave notice of his injury to the Calumet Baking Powder Company; that within less than six months he filed his claim for compensation against his employer and Ætna Life Insurance Company with the Industrial Accident Board of Texas; that on the 5th day of April, 1923, the Industrial Accident Board rendered its final ruling and decision on plaintiff's claim; that on the 24th day of April, 1923, plaintiff gave notice to the Industrial Accident Board and to the Ætna Life Insurance Company that he would not abide by the final ruling and decision of the Industrial Accident Board on his claim; that suit was filed in the district court of Anderson county, on the 14th day of May, 1923, within less than 20 days after giving said notice.

"(16) I find that plaintiff employed Seagler & Pickett, attorneys, to prosecute his suit, and his contract with them was reasonable, and they should have one-third of the amount recovered in this suit.

### "Conclusions of Law.

"I conclude that plaintiff is not entitled to recover anything in this suit, because the injury received by him did not have to do with, and originate in, the business of his employer, and did not arise out of, and was not incident to, the risk assumed in performing the master's task."

### Opinion.

In view of the court's conclusions:

"That at the time plaintiff received the injury he was in his car and on his way to call upon the Moore Wholesale Grocery Company, in the city of Palestine, in the usual course of his employment, to solicit an order from said company for baking powders in the furtherance of his employer's business; * * * that at the time he received said injuries plaintiff was actually on his journey to the Moore Wholesale Grocery Company; that plaintiff's purpose in removing said gun was to leave the same in his garage, so that he could more safely travel in said car; that the removal of said gun would facilitate the transaction of his employer's business by enabling him to travel more safely and conveniently.

"I find that the proximate cause of the injury was that plaintiff was thrown off his balance by the motion of the car, and the gun was thereby caused to be fired accidently,"

—it is our judgment that the trial court erred in rendering judgment against appellant and in favor of appellee. Section 1, pt. 4, of the Employers' Liability Act, being article 5246, Vernon's Ann. Civ. St. Supp. 1918, provides:

"The term 'injury sustained in the course of employment,' as used in this act, shall not include:

"1. [Not material.]

"2. [Not material.]

"3. [Not material.]

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

It cannot be denied, and in fact the court so found, "that the injury to plaintiff was received while engaged in or about the furtherance of the business of his employer." This must follow because of the court's conclusion "that at the time he received said injuries plaintiff was actually on the journey to the Moore Wholesale Grocery Company." Also, we think it is equally clear that the injury had to do with and originated in appellant's work for his employer. The court expressly found that the removal of the gun would facilitate the transaction of the business in which appellant was engaged. The court also found that the proximate cause of the injury was the motion of the car which was being operated by appellant in furtherance of his business. While the automobile was the property of appellant, it was his duty to operate it in the business of his employer and under the court's conclusions it clearly appears that he was, in fact, so operating it. The causative danger that resulted in appellant's injury was not common to the neighborhood, but was incidental to the business in which appellant was at that time engaged, to wit, that of operating the car. It was not independent of appellant's relation to his master, but was proximately related thereto, as found by the court. It was appellant's duty to facilitate and advance his employer's business, and it was his duty to do all things that would enable him to travel more safely and conveniently. Under the conclusions of the trial court that we have just quoted, we think the danger that resulted in appellant's injury had its origin in a risk connected at that time with his employment, and that it flowed from that source as a rational consequence. Can it be denied, under the court's conclusions, that appellant was undertaking to perform a task for his master, and was, in fact, performing it in operating his car at the time of his injury? Under the court's conclusions, can it be denied that the master's interests would have been furthered by a removal of the gun from the car? Under the court's conclusions, can it be denied that the discharge of the gun was actually and in fact occasioned by the operation of the car? If these conditions are inherent in the trial court's conclusions, then does not this case come within the rule announced in Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 918, cited with approval by our Supreme Court in Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402.

"What the law intends is to protect the employee against the risk of hazard taken in order to perform the master's task."

Appellant cites, as conclusive of this case, Texas Employers' Insurance Association v. Bailey (Tex. Civ. App.) 266 S. W. 192, writ of error denied by the Supreme Court. We quote as follows from that opinion:

"Bailey was employed as a laundry automobile truck driver, at the time of his injury, in receiving and delivering clothes for the laundry company, a subscriber to the appellant association. While driving the laundry truck for the laundry company on the public road, one Stewart E. Gray, carrying a gun, was on the roadside, and as Bailey came along Gray hailed him, and requested a ride with him in the laundry truck, and Bailey permitted Gray to board the laundry truck and occupy the vacant seat by his side. While riding in the truck with Bailey, the gun carried by Gray was accidentally discharged, taking effect in Bailey's foot, thereby necessitating the amputation of the injured foot. * * *

"To hold appellant liable for the injury sustained by Bailey by the accidental discharge of the gun, under the above definition of the statute of what is meant by 'injury sustained in the course of employment,' it must appear that the injury to Bailey had to do with and originated in the laundry business of the American Union Laundry Company; that the injury was received by Bailey while he was engaged in the furtherance of the affairs or business of the laundry company, that is, the injury had to do with and originated in the laundry business of the laundry company. While it is true that at the time of the injury Bailey was then returning in the laundry truck to the laundry, a service in furtherance of the business of the laundry company, it is not made to appear that the injury to Bailey had to do with and originated in the business of the laundry company, but it appears directly to the contrary. It could not be said that the injury to Bailey by the gunshot from Gray's gun had to do with and originated in the business of the laundry company. It was no part of Bailey's service on his return to the laundry company's place of business to have Gray, a stranger to Bailey, a hunter wanting a ride, who was in no way connected with the business of the laundry company, and to whom the laundry company owed no duty, to occupy a seat in the laundry truck. Gray's presence on the laundry truck at the invitation of Bailey, and the accidental discharge of Gray's gun while on the laundry truck, causing the injury to Bailey, are incidents apart from the laundry business, and the injury caused thereby did not result from a risk or hazard incident to the business of the laundry or Bailey's services to the laundry company. The causative danger of permitting Gray with a loaded gun to occupy a seat on the laundry wagon was not incidental to the laundry business, but wholly independent of any relation between Bailey and the laundry company."

We think the facts in the Bailey Case are clearly distinguishable from the facts of this case. There Judge Walthall said:

"It was no part of Bailey's service, on his return to the laundry company's place of business, to have Gray, a stranger to Bailey, a hunter wanting a ride, * * * to occupy a seat in the laundry truck."

Here it was a part of appellant's business to expedite the business of his employer and to facilitate the transaction of his employer's business, and the court expressly found that the removal of the gun would have had that effect.

Again Judge Wathall said:

"Gray's presence on the laundry truck at the invitation of Bailey, and the accidental discharge of Gray's gun while on the laundry truck, causing the injury to Bailey, are incidents apart from the laundry business, and the injury caused thereby did not result from a risk or hazard incident to the business of the laundry or Bailey's service to the laundry company."

The placing of the gun in appellant's automobile did not cause his injury. It was his attempt to remove the gun, in furtherance of his master's business, that resulted in the loss of his hand. The placing of the gun in the automobile may have been negligence on appellant's part, but his case does not rest upon that fact. The hunting of the doves was a matter personal to appellant, with no connection with his employer's business, but the hunting of the doves was not the proximate cause of his accident. His injury resulted from the fact that, while he was operating his car in the interest of his master's service, the gun was discharged. As was said by the Supreme Court of Wisconsin in Federal Rubber Co. v. Havolic, 162 Wis. 341, 156 N. W. 143, L. R. A. 1916D, 968, speaking of the causative danger that resulted in the accident:

"It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The trial court here directly concluded that the proximate cause of appellant's injury was the operation of the car, and while appellant and the other parties interested in this case may not have foreseen or expected the result of appellant's attempt to remove the gun from the car, yet the injury did, in fact, result, and had its origin, as a proximate cause, in a circumstance directly connected with appellant's employment, to wit, the operation of his car.

Again, in the Bailey Case, Judge Walthall said:

"The causative danger of permitting Gray with a loaded gun to occupy a seat on the laundry wagon was not incidental to the laundry business, but wholly independent of any relation between Bailey and the laundry company."

Here, as we have already said, the causative danger that resulted in appellant's injury was not the hunting of the doves, nor the leaving of the gun in the car, but in the attempt to remove the gun from the car, which was done by appellant in an effort to further the interests of his master.

Without criticising or impairing in the least the authority of the Bailey Case, but recognizing it in all respects as the law of this state, we see no connection between it and the facts of this case. It follows from what we have said that it is our duty to reverse the judgment of the trial court and here render judgment in favor of appellant against appellee for the full compensation period, to wit, 150 weeks, at $15 per week, and for the sum of $195 as the reasonable cost for medical attention for the first weeks after his injury.

Reversed and rendered.