## TEXAS INDEMNITY INS. CO. v. McLAURY et al.
### No. 3846.

Court of Civil Appeals of Texas. Amarillo.
Nov. 23, 1932.

Don Emery, of Amarillo, T. L. Dyer, of Breckenridge, and Walter L. Barnes, of Des Moines, Iowa, for appellant.

Clem Calhoun and R. A. Wilson, both of Amarillo, for appellees.

MARTIN, J.

Charles A. McLaury was employed by the Phillips Petroleum Company about January 1, 1931, as a special officer, whose precise duties will be the subject of a further statement herein. At all times mentioned herein, the Phillips Petroleum Company had large property interests in Hutchinson county and employed a large number of men, particularly in connection with the operation of their refinery, situated at the town of Phillips, near Borger, in Hutchinson county, Tex. The town of Phillips was a small village supported largely, but not entirely, by the employees of the Phillips Petroleum Company. Several business establishments were there located, including Shelby's Grocery Store and Miller's Café, situated on opposite sides of the street from each other. On March 11, 1931, one D. C. Evans, who was employed at the time as a dishwasher in Miller's Café, came through Shelby's Grocery Store and was observed by an employee of said grocery store to be carrying a pistol. Charles A. McLaury was phoned by said employee and immediately came to said grocery store and went across to a drug store situated next to Miller's Café. There he found Evans who ran into Miller's Café, where he worked, and in this last-mentioned place shot and killed McLaury, who was at the time attempting to disarm him.

Appellees are the wife and two minor sons, respectively, of Charles A. McLaury, deceased.

Thereafter the Industrial Accident Board of the state of Texas awarded to appellees compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), and, in due time, appellant instituted this suit in the district court of Hutchinson county, Tex., to cancel and annul said award.

On the trial of this case appropriate issues were submitted to and answered by the jury, after which judgment was entered for appellees, from which judgment an appeal was taken to this court; the only issue assigned being one that relates to the refusal of the court to peremptorily instruct the jury for appellant. This, in brief, is based upon the alleged lack of sufficient evidence to show that the injury from which the death of deceased resulted was sustained in "the course of his employment." This is the sole question presented to us for determination.

As in all fact questions, precedents are of little value, as different cases based upon the same identical state of facts are extremely rare. It seems unnecessary, therefore, for us to do more than advert to the general principles believed to be helpful in the solution of the question presented.

We take the following exceptionally lucid statement of the rule governing cases of this character from the case of In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the

work and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

We quote as follows from the Supreme Court of Texas:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

" 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.'—Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 916, 918." Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402.

 These quotations will sufficiently illustrate the rule which must guide us in solving the question of whether or not the injury of deceased was received in the "course of his employment." The only facts which we deem necessary to state upon this question are, briefly, as follows: One L. A. Gaston, described as chief special agent of the Phillips Petroleum Company, made the contract of employment with deceased. We quote literally from his testimony:

"Q. What instructions did you give Charles A. McLaury about his employment and the scope of his employment at or near the time he entered the services of the Company in Hutchinson County? A. Well, I instructed him that his duties were to protect Phillips property from any depredation, thieving, and keep down lawlessness on the Phillips property.

"Q. Was there any specific instance developed with reference to his employment and the scope of it that—with reference to his duties on Phillips property or off Phillips property that you talked to him about? A. Oh yes. * * * He notified me that there was a fellow running a bootlegging joint on one of our leases in Hutchinson County and I told him to get rid of him, get him off of there. Then he told me of one that was off our lease, not on Phillips property, but it was pretty close there, and I told him to speak to the Sheriff about that one, let the Sheriff take care of that. * * *

"Q. Mr. Gaston, you are in charge of all the special officers or special agents for the Company? A. Yes sir.

"Q. Their duties are principally those of police peace officers, are they not, in connec- tion with the Company and its property and employees? A. Yes sir. * * *

"Q. Mr. Gaston, now did I understand you to say that you limited Mr. McLaury's work as far as his services for the Phillips was concerned, to the protection of the premises of the Phillips Petroleum Company? A. Yes sir.

"Q. And the property on the premises against lawlessness and depredation, I understood you to say that? A. Yes sir.

"Q. And I understand you also to say that was the limit and extent of his employment with the Phillips Petroleum Company? A. Yes sir.

"Q. And did you understand that when he was called on by the Sheriff or any case of emergency that he was supposed to act as a deputy sheriff, if he were a deputy sheriff? A. Yes sir.

"Q. But that was outside his employment with the Phillips? A. Yes sir.

"Q. The Phillips was not paying him for that service, did not employ him for that service or hire him for that service? A. No.

"Q. That was told him definitely and expressly at or near the time of his employment? A. Yes sir."

This witness further testified, in substance, that the company's special officers usually had commissions as peace officers, but this was not a condition of their employment. In this case it was further shown that the deceased, McLaury, had a commission as "special deputy sheriff Phillips Petroleum Company" issued by the sheriff of Hutchinson county, Tex. It further appears affirmatively that the little village of Phillips was not owned or controlled by the Phillips Petroleum Company, that the employee of the grocery store who called the deceased was in no way connected with the Phillips Petroleum Company, nor was Evans, nor were the premises in which the killing occurred owned or controlled by said company. The injury was received off the premises of the Phillips Petroleum Company, and, so far as this record shows, none of its employees figured in any way in the mêlée which led to the killing, nor were any of them on duty at or near the scene, nor were they or any of them or the property of the said company in any imminent danger of an attack or threatened attack from the said Evans. It was further proven that McLaury had specific instructions from his superior not to make any arrest for the company off its own premises, but to refer any matter of that kind to the sheriff of Hutchinson county.

It is insisted by appellees that McLaury's act was in the performance of his duties as a police peace officer in connection with Phillips Petroleum Company, its property and employ-

ees, and that therefore his act was within the scope of his employment.

He might, of course, act both as a deputy sheriff and as an employee in the performance of his duties to his principal, and the fact that he acted in a dual capacity would not alone relieve appellant herein from liability. If his acts, however, were purely official and not done in the performance of his said duties, express or implied, there would clearly be no liability. It is plausibly argued that, since the arrest of Evans had the effect of protecting the employees of the Phillips Petroleum Company from danger, the act of deceased came within the scope of his employment, which made it a part of his duty to protect such employees. Under the particular facts of this case we do not regard the interest of or benefits, if any, received by the Phillips Petroleum Company from such arrest as any greater than that received by the public generally. In other words, the company was interested in the arrest of Evans as a member of society and in the same degree that the other citizens of Hutchinson county were. His arrest under the recited facts was not to protect the Phillips Petroleum Company or its property or employees from any danger of an attack or threatened attack from Evans. It occurred off its premises, in a public place with which said company had no connection whatever. The authority to make such character of arrest had been expressly denied by the company at the time of its employment of McLaury. We regard the testimony as going no further than to show that Evans was arrested by a purported peace officer, acting as such, concerning which the employer of the deceased had an interest only as a member of society and not directly as the employer of McLaury. We interpret the duties of McLaury, that of "ordinary police peace officer" mentioned above by Gaston, to mean his duties in connection with his employment to protect the Phillips Petroleum Company, its property and employees. To extend the meaning of this phrase to embrace the arrest in question would be to hold, it seems, that he was employed to perform the duties of ordinary peace officers in protecting the public generally.

We do not discuss the invalidity of the deputation of deceased nor the illegality of the arrest of Evans, since these questions very remotely, if at all, affect the real question, which is the authority, express or implied, given to the deceased to make such arrest under his employment.

We are not convinced that the facts have been fully developed, and think that the ends of justice can be better served by reversing and remanding, rather than reversing and rendering this case.

Reversed and remanded.