TEXAS EMPLOYERS' INSURANCE AS-
SOCIATION, Appellant,

v.

Mary ANTHONY, Appellee.

No. 6421.

Court of Civil Appeals of Texas.

Amarillo.

June 28, 1954.

Rehearing Denied Sept. 7, 1954.

Underwood, Wilson, Sutton, Heare &
Boyce, Amarillo, for appellant.

Gordon, Gordon & Buzzard, Pampa, for
appellee.

NORTHCUTT, Justice.

This is an appeal from a judgment entered by the District Court of Gray County, Texas, upon a jury verdict in favor of appellee who brought suit against the appellant under the provisions of the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., by reason of the death of her husband, Bob Anthony, who was killed on December 24, 1952, while allegedly in the course of his employment for Groninger & King. . . .

■ The defense presented on the trial and now raised by this appeal was that on the day of his death Bob Anthony had subjected himself to the control of Ed Haner, the Humble representative, with respect to both what was done and how it was being done so that with respect to that day he became in law the employee of Humble and not Groninger & King and also that Bob Anthony, at the time of the accident that occasioned his death, was not in the course of his employment nor engaged in the furtherance of his employer's business. Appellant further complains of the act of the trial court in entering judgment for a recovery in excess of $9 per week for 360 weeks and that there was no issue submitted to the jury by the trial court with regard to Bob Anthony's average wage and compensation rate and otherwise no findings of fact in that regard. The contention of appellant can be best understood by its statements in its brief which are as follows:

"The jury's verdict consisted of its answer to three special issues submitted by the court. The defendant's theory that on the date of the fatal injuries Anthony had become the special or borrowed employee of Humble Pipe Line Co. (Tr. p. 11) was not submitted to the jury either by special issues,

definitions or instructions. No issues were submitted to the jury inquiring about the average weekly wage or compensation rate.

"Anthony was in the general employ of Groninger & King for whom defendant herein is the compensation insurance carrier. Defendant pleaded by its trial amendment that Anthony was under the control of Humble with respect to what was done and how it was being done so that he had become the special or borrowed employee of Humble on the day of his death (Tr. p. 11).

"Judgment was entered in favor of plaintiff for death benefits at the maximum rate provided by the compensation statute. (Tr. p. 34). From this judgment defendant has regularly appealed.

"The controlling questions here will be:

"(1) Had Anthony become the special or borrowed employee of Humble on the date of his death; and was he to be considered as in the course of his employment for any one while he returned from work on that occasion?

"(2) Was the trial court in error when it entered judgment for compensation in excess of $9.00 per week for the 360 weeks provided by the compensation statute?"

As shown by the statement above, "Anthony was in the general employ of Groninger & King for whom defendant herein is the compensation insurance carrier." Defendant, appellant here, by its admissions in the statement of facts admits that "on or about and prior to the 24th day of December, 1952, Bob Anthony was an employee of Groninger & King."

Bob Anthony was the foreman of the Groninger & King crew of men. The Humble Pipe Line Company had hired from Groninger & King this crew of men to lower a ten-inch pipe line across a cultivated field and paid Groninger & King so much an hour per man. One Edward Haner, an employee of Humble Pipe Line Company, was in charge of getting the line lowered and directed the lowering of the pipe line into the ditch and told the men when to pick the pipe up, when to push it over and when to lower it and how much to lower it. Haner and the Anthony crew left the Groninger & King place of business in Pampa early the morning of December 24, 1952, for the location where the pipe was to be placed in the ditch and arrived there about 9:30 a. m. The men completed the lowering of the pipe line about 12:30 and left to return to Pampa. Just before leaving the job, Bob Anthony gave his time book to Haner so that Haner would have the names of the men working and could give the information to the Humble Pipe Line Company. After the work was completed, all of the men started to return to Pampa. The weather was bad on that day and snow and ice were on the roadway. While they were returning to Pampa after the work was completed for Humble, Anthony sent some of the Groninger & King crew back to help the other members of the crew. While returning to Pampa the car Anthony was driving skidded and turned over and Anthony was killed. Bob Anthony often used his own car in taking the men on jobs. It is undisputed that Bob Anthony was the foreman of the Groninger & King crew of men and that he was responsible for the men and equipment until they got back to the Groninger & King shop in Pampa and he unloaded the equipment or had someone else to.

We are of the opinion that even though while the work was in progress and they were lowering the pipe into the ditch and Bob Anthony was the special or borrowed servant of the Humble Pipe Line Company that the work that day for Humble was completed and Bob Anthony and the men under him were not under the directions or supervision of Haner, the Humble representative, any further but Bob Anthony was then in the course of his employment in seeing that the Groninger & King men and equipment were returned to the place of business of Groninger & King.

The Supreme Court of this state has often held that the Workmen's Compensation Act should be liberally construed to effect its remedial purpose and justice. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Hargrove v. Trinity Universal Ins. Co., Tex.Sup., 256 S.W.2d 73.

What had happened in the past was not controlling but the test was the condition that existed at the time of the accident. Appellant admits that on or about and prior to the 24th of December, 1952, Bob Anthony was a general employee of Groninger & King. Under this record Bob Anthony's responsibility to Groninger & King had not ended when he was killed although his work with Humble had ceased. It was to the interest of Groninger & King that their men and equipment be returned and it cannot be successfully contended that he was not engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere while he was returning the men and equipment of his employer to his employer.

We are of the opinion and so hold that Bob Anthony was in the course of his employment for Groninger & King and that this case would easily come within the view expressed by the Supreme Court in American Mut. Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844, 846, where it said:

"The term 'injury sustained in the course of employment' is defined in Art. 8309, Vernon's Civil Statutes. The definition excludes certain injuries and then provides that the term '* * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.' It is apparent from the very nature of the definition that no exact formula can be prescribed which

will automatically solve every case. Whether or not a given accident is so intimately related to the employment as to come within the definition must necessarily depend upon its own particular facts and circumstances, but in applying the definition to the facts of this particular case, we are not left without valuable guides. This court has considered many cases based upon facts similar to the facts of this case and, by following the reasoning employed in deciding those cases, the certain conclusion is drawn that the deceased at the time he sustained his injuries came within the terms of the definition.

"The salient facts in this case are: The deceased was a regular employee of the Lone Star Defense Corporation; he sustained the injuries resulting in his death on the premises of his employer through a hazard to which his employment daily exposed him; the particular crossing at which the train struck his car was used only by employees; the employer provided no place of residence for its employees and the transportation of the employees to and from the premises of the employer and to and from the particular areas in which they worked was in the interest of the employer; on the day of the injuries the deceased appeared with his riders for the purpose of performing his customary day's work, but was denied the right to go to work because his shoes were not equipped with safety heels; his trip to Texarkana was for the purpose of having safety heels put on his shoes and when he returned properly equipped he was admitted upon the premises because he was an employee; in traveling across the premises of his employer to pick up the riders at the end of their shift, he was working in the interest of his employer. These facts constitute substantial evidence in support of the jury's finding that deceased sustained his fatal injuries while in the course of his employment."

The Supreme Court in the case of Liberty Mut. Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514, 515, stated:

"After a careful consideration of the above facts we are unable to say, as a matter of law, that Mr. Nelson was not acting in the course of his employment with Peterson Brothers at the time he received his fatal injuries. It is true that he was not engaged in painting at the time, but he was on a mission pertaining to his employers' business, in furtherance thereof and for their benefit. Also, he was engaged in performing services for his employers which he was in the habit of performing with their knowledge, and which were fully approved by them. Counsel for the Insurance Company lays great stress on the fact that Mr. Nelson was paid nothing for his time or automobile when doing services such as this for his employers. It is true that Mr. Nelson received compensation by the hour only when he was at work on his employers' premises, but we do not regard this as conclusive in this instance. If Mr. Nelson needed paint or brushes in order to further his work, it might have been to his interest and to the interest of his employers for him to make this trip. Certainly through years of transactions Mr. Nelson's employers had approved his actions in using his car to make trips for them. In the face of such a record this court cannot say, as a matter of law, that the evidence in this case fails to show that Mr. Nelson was acting within the scope of his employment when he went on this trip to procure supplies for his employers, in order that he himself might continue to prosecute his work for them as a painter. * * *

"In our opinion the rule of law laid down in Lumberman's Reciprocal Ass'n v. Behnken, supra, fully authorizes recovery of compensation in this case. We quote as follows from such opinion (112 Tex. 103, 246 S.W. [72] 73):

" 'The Workmen's Compensation Law provides for compensation for the death of an employee from "an injury sustained in the course of his employment," and declares that "all other injuries of every kind and character," except certain enumerated injuries from causes or under conditions quite different from any attending the injury to Behnken, shall be included within the term "injury sustained in the course of employment," when "having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer whether upon the employer's premises or elsewhere." Articles 5246–5, 5246–82, Vernon's Sayles' Texas Civil Statutes, 1918 Supplement (Vernon's Ann.Civ.St. arts. 8306, § 3b, 8309, § 1). * * *' "

Under this record we are unable to say that Mr. Anthony was not acting in the course of his employment with Groninger & King at the time he was killed, because he was in the very act of seeing that their men and equipment were being returned to their place of business as was his duty to do.

As to appellant's Point 9 where it contends that "the court materially erred in entering judgment for a recovery in excess of $9 per week for 360 weeks," we are of the opinion that the appellant is bound by its admissions when it admits "that an average weekly wage of $58 is just and fair to both the plaintiff and the defendant as a basis of calculating the wage and compensation rates of Bob Anthony herein," and that the trial court did not err in granting judgment for the $25 per week for the 360 weeks.

There being no error presented on appeal, the judgment of the trial court is affirmed.