TEXAS EMPLOYERS' INS. ASS'N v. KNOUFF. (No. 173.)

(Court of Civil Appeals of Texas. Waco. March 12, 1925. Rehearing Denied April 23, 1925.)

1. Master and servant ⬤⟩397—Jurisdiction of Industrial Accident Board original and primary.

The jurisdiction of the Industrial Accident Board over all issues arising in course of administration of the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) is original and primary.

2. Master and servant ⬤⟩416—Final rulings of Industrial Accident Board conclusive unless set aside by court.

The final rulings, decisions, and awards of the Industrial Accident Board are binding and conclusive, unless set aside by court of competent jurisdiction in manner prescribed by Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

---

⬤⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Master and servant ⬤=417(5)—Review of ruling of Industrial Accident Board trial de novo.**

In action to set aside a final ruling or decision of the Industrial Accident Board, the trial is de novo, and burden is on party claiming compensation, and jurisdiction to hear and determine all issues is as broad as jurisdiction conferred on board under Workmen's Compensation Act, pt. 2, § 5 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44) in its original hearing of such issue.

**4. Master and servant ⬤=382—Compromise under Compensation Act in nature of accord and satisfaction.**

A compromise agreement under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) is in nature of an accord, and a settlement thereunder, is in nature of a satisfaction thereof.

**5. Accord and satisfaction ⬤=17—Accord not fully executed may be rejected by party entitled to receive satisfaction.**

An accord not fully executed may be set aside or rejected by party entitled to receive satisfaction thereof, in which case original right of action remains, and what has been paid or delivered is allowed in diminution of amount claimed.

**6. Master and servant ⬤=417(5)—Suit to set aside ruling of Industrial Accident Board held to bring whole subject-matter before court for adjudication.**

Where the Industrial Accident Board found that compromise agreement was not carried out, declared that it had no force or effect, and fixed the amount of compensation, *held* that such findings constituted one ruling, and a suit by claimant to set aside such ruling brought whole subject-matter before district court for adjudication, and court should have determined question as to compliance with agreement.

**7. Master and servant ⬤=417(5)—On suit to set aside compensation ruling claimant may plead and prove injuries more fully.**

Where compensation claimant in her original claim described injury as "dislocation of one kidney and badly jarred all over," *held* that, in view of Workmen's Compensation Act, pt. 1, § 12, and part 2, § 4 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—21, 5246—42), in suit by claimant to set aside ruling of Industrial Accident Board, claimant was properly permitted to plead her injuries more fully and testify to specific details of injury.

**8. Master and servant ⬤=418(5)—Requiring physical examination of compensation claimant not reviewable in absence of abuse of discretion.**

Though, under Workmen's Compensation Act, pt. 2, § 4 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—42), compensation claimant may be required to submit herself for examination by physicians, on application of insurer, no inflexible rule can be prescribed as to the number of physicians, or the number of examinations, and the court on such application should exercise sound judicial discretion, and his action thereon will not be reversed except for abuse.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Suit by Neita Knouff against the Texas Employers' Insurance Association to set aside a decision of the Industrial Accident Board. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Lawther, Pope, Leachman & Lawther, of Dallas, and Nat 'Harris, of Waco, for appellant.

Spell, Naman & Penland, of Waco, for appellee.

GALLAGHER, C. J. Miss Neita Knouff, appellee herein, was, on and prior to September 27, 1921, an employee of the Goldstein-Migel Company, which company carried an insurance policy obligating appellant to pay to its employees the compensation provided by our Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), in case they sustained injury in the course of their employment. Appellee sustained such injuries on said date. Her employer had actual notice of the accident, and that some injury to appellee resulted therefrom, immediately after the occurrence. Within 30 days thereof formal notice of such accident and injury was given and claim for compensation therefor filed with the Industrial Accident Board. Appellant, without waiting for a hearing on said claim, began to pay to appellee compensation at the rate of $8.65 per week. Such payments do not seem to have been continuous week by week. On July 7, 1922, appellant and appellee entered into a compromise settlement agreement. Said agreement recited in substance that the facts and circumstances connected with and surrounding the infliction of the injuries suffered by appellee made the liability of appellant uncertain and indefinite and incapable of being satisfactorily established; that appellant had been paid compensation for 26 weeks at $8.65 per week, together with medical and hospital expenses; that it was mutually agreed between the parties that the provisions of the act permitting compromise agreement and settlement of liability applied, and that appellee agreed to settle and compromise her claim for the sum of $600, in addition to the amounts theretofore received by her thereon; that the same was subject to the approval of the Industrial Accident Board, and when approved and such payments made by appellant and accepted by appellee, that appellant's liability would be fully and finally compromised, settled and satisfied. Among the affidavits submitted with said agreement was one by appellee, stating that she had read the same, was willing to abide

thereby in view of the report of physicians submitted therewith; that she realized her condition was uncertain as to the extent of disability, and for that reason desired such adjustment made. Said affidavit contained a request to the Board to approve the agreement. This compromise agreement was filed with the Industrial Accident Board on July 13, 1922. It does not appear that any hearing prior thereto had been had on appellee's claim for compensation theretofore filed with the Board. Two of the members of the Board approved said agreement by an "o. k." indorsement entered thereon. Whether any further order was made in this connection does not appear. Appellant paid said sum of $600 to appellee, and she accepted the same and signed an indorsement on the check by which the same was paid that she released and forever discharged appellant from any further claim resulting or to result from such injury.

Thereafter, on November 27, 1922, appellee, by her attorney, filed with the Industrial Accident Board a petition, reciting that she had agreed to said compromise and settlement upon the express representation and agreement by appellant that it would pay all medical and hospital bills incurred by her, and especially a certain amount due for chiropractic treatments which she alleges she had taken at the suggestion and with the approval of appellant; that appellant had failed to pay for said treatments; that she would not have entered into said agreement nor accepted the sum paid her thereunder but for such express agreement that said particular claim would be paid, an itemized and verified account of which she attached to her said petition. She prayed that the cause be reopened, that said compromise settlement be set aside and said account allowed, and for such other and further relief as she might be entitled to receive. She supported her said petition with her own affidavit fully sustaining the same, and to some extent amplifying the allegations thereof.

Said petition was heard by the Industrial Accident Board on April 12, 1923, at which time the Board made its findings thereon, among which was a specific finding that appellant, in failing to pay said bill for chiropractic treatments given appellee, had failed to fulfill its said compromise agreement. The order of the Board containing said findings declared that said agreement was for said reason of no binding force or effect; that appellee's claim for compensation for her said injuries was pending before said Board, and that the only effect of said agreement was to entitle appellant to credit for the amount paid appellee thereunder. The Board in said order fixed certain compensation for appellee, and directed that all amounts paid theretofore on account of her claim for compensation for her said injuries be credited thereon.

Appellee in due time thereafter gave the required notice that she was not willing and did not consent to abide by said final ruling, decision, and award of said Board. In describing the same in said notice, no mention was made of so much thereof as affected the former compromise agreement and settlement, but only so much thereof as declared her entitled to receive the compensation therein awarded was recited. Appellee, in due time, filed this suit to set aside said final ruling and decision of the Board. Her petition contained the usual averments in such cases. The final ruling and decision of the Board sought to be set aside was described therein only by the date thereof. No mention of any payments by appellant was made in said petition, and a lump sum settlement on the basis of weekly payments of $8.65 per week for 401 weeks was sought.

Appellant filed a plea to the jurisdiction of the court on the ground that the compromise settlement was final, and that the Industrial Accident Board had no jurisdiction to set the same aside. Appellant also pleaded said compromise settlement in bar of any recovery by appellee. The court overruled appellant's said plea to the jurisdiction, and sustained an exception to said plea in bar. The case was submitted to a jury on special issues. No issue with reference to said compromise settlement was submitted, but apparently the action of the Board in declaring that the same had not been fully complied with and was of no binding force and effect was treated as final and not before the court for review or adjudication. The findings of the jury, so far as material to this appeal, were that appellee was injured as alleged; that she had given notice of such injuries and had filed a claim for compensation therefor, as required by law; that such injuries resulted in permanent total incapacity, and that a failure to award a lump sum settlement of compensation due her on account of such injuries would work manifest hardship and injury to her. The court rendered judgment on the verdict of the jury in favor of appellee, for herself and for the use and benefit of her attorneys, in the proportions provided by law, for $2,065.44. The judgment recited that said sum was arrived at by calculating compensation at the rate of $8.65 per week for 401 weeks, discounting the same at the rate of 5 per cent. per annum, and deducting the amount of $861.98 previously paid by appellant to appellee. The case is before us for review on appeal.

The evident purpose of the Legislature in creating the Industrial Accident Board, and confiding to it the administration of the Workmen's Compensation Act, was to afford to the injured employee a forum in which he can present his claim for compensation, have its merits determined and appropriate relief speedily awarded. No provision is made for terms or sessions of said board. In con-

templation of law, it is always open to receive, hear, and determine complaints. The statutory directions with reference to procedure before it are few and simple. The services of an attorney in presenting and prosecuting a claim for compensation before it are not indispensable. Its methods are informal and speedy, and therefore peculiarly appropriate in administering said act and affording the relief provided thereby. Our Supreme Court has declared such act to be a remedial statute, to be liberally construed, with a view to accomplishing its purpose and promoting justice. Lumbermen's Reciprocal Assn. v. Behnken, 112 Tex. 103, 112, 246 S. W. 72, 74, 28 A. L. R. 1402.

[1-3] The jurisdiction of the Board over all the issues arising in the course of the administration of said act is original and primary. Its final rulings, decisions, and awards are binding and conclusive, unless set aside by a court of competent jurisdiction in the manner prescribed by the terms of the act. When a suit to set aside a final ruling or decision is properly brought, then and then only does the court in which such suit is brought become invested with authority and jurisdiction to hear and determine the issue involved in said ruling or decision. In such cases it acts instead of the Board, and determines the rights and liabilities of the parties according to the provisions of said act. The trial is de novo, the burden is on the party claiming compensation, and the jurisdiction to hear and determine all the issues and afford appropriate relief within the terms of the law is as broad as the jurisdiction conferred on the Board in its original hearing of such issue. Workmen's Compensation Act, pt. 2, § 5; Lumbermen's Reciprocal Assn. v. Behnken, supra, pt. 114, 115 (246 S. W. 72); Consolidated Underwriters v. Saxon (Tex. Com. App.) 265 S. W. 143, 146; Texas Employers' Ins. Ass'n. v. Mullican (Tex. Civ. App.) 261 S. W. 215; Millers Indemnity Underwriters v. Hughes (Tex. Civ. App.) 256 S. W. 334, 336, 337.

[4, 5] A compromise agreement under the act is in the nature of an accord, and a settlement thereunder in the nature of a satisfaction thereof. The jurisdiction of the Board over such compromise agreements and settlements is specially conferred by the terms of the act, and its approval made necessary to the validity of any agreement between the parties with reference thereto. Workmen's Compensation Act, pt. 2, § 12. An accord not fully executed may be set aside or rejected by the party entitled to receive satisfaction thereof. In such cases the original right of action remains, and what has been paid or delivered is allowed in diminution of the amount claimed. 1 C. J. p. 533, §§ 21 and 23.

[6] Appellee contended that the compromise agreement involved herein was not fully complied with, and that appellant had refused to comply with a part of the same. This contention presented an issue growing out of the administration of the provisions of the act, and one over which, in our opinion, the Board had original jurisdiction. Such jurisdiction, however, was not final. Its ruling or decision in disposing of such issue was, like any of its other rulings or decisions, subject to an adjudication of such issue by a court of competent jurisdiction in a suit to set such ruling or decision aside. The Board's ruling or decision of April 12, 1923, here under consideration, not only found that the compromise agreement had not been fully carried out, and declared that the same for that reason had no binding force and effect, further than to entitle appellant to credit for the amount paid thereunder, but such ruling or decision further found that appellee was entitled to compensation, and fixed the amount thereof. We think the several findings and declarations embraced therein are so interdependent as to constitute the entire order as entered one ruling or decision of the Board, within the terms of the act providing for the bringing of suits to set aside such rulings or decisions.

Appellant seemed to be satisfied with said ruling or decision of the Board as a whole since it took no action to set it aside. It ought not to be required to sue to set aside a ruling or decision with which, as a whole, it was willing to abide, on penalty of having so much thereof as was unfavorable to it remain final and binding while so much thereof as was favorable to it was abrogated by a suit to set the same aside, filed by appellee. Appellee was not satisfied with such ruling or decision of the Board as a whole, and brought a suit to set it aside, but sought to limit the court in the trial of such suit to consideration of so much of such order or ruling only as was unsatisfactory to her. This, in our opinion, she was not authorized to do. We think her suit to set aside said ruling or decision of the board brought the whole subject-matter of the same before the court for adjudication. Such, in fact, was the language of her petition, wherein she described the order sought to be set aside by its date alone. It has been frequently said that suits to set aside rulings or decisions of the Industrial Accident Board, since trials therein are required to be de novo, are analogous to appeals from the judgments of justices of the peace to the county court. It has been continuously and consistently held in such cases that an appeal from a judgment of the justice of the peace by one party to such judgment vacates the same, and brings the entire case, with all its parties and issues, before the county court for final disposition. Moore v. Jordan, 65 Tex. 395; Ingraham v. Rudolph, 55 Tex. Civ. App. 609, 119 S. W. 906; Lasater v. Streetman (Tex. Civ. App.) 154 S. W. 657. It therefore follows that, in our opinion, the district court

(271 S.W.)

not only had jurisdiction to determine whether the compromise agreement and settlement had been complied with, and whether the same was binding on appellee and conclusive of her claim for further compensation or not, but that it was necessary that such issue should be determined by the court in favor of the contention of appellee before she could be adjudged entitled to further compensation.

[7] Appellee was a relief telephone operator in a department store. The telephone booth was entered by ascending a flight of steps three feet high. These steps were movable. While she was in the booth they were removed. When she left the booth, not knowing that the steps had been removed, she stepped out, expecting to land on the first step. Instead, she stepped on the floor three feet below. She did not fall prone on the floor, but landed on one knee and immediately caught herself or regained control of her actions, and arose, receiving as the result of such fall what she termed a severe shock. Her notice of injury and claim for compensation were both dated October 15, 1921, or a little over two weeks after the accident. In her claim for compensation she described her injuries as follows: "Dislocation of one kidney and badly jarred all over." In her petition to set aside the award of the Industrial Accident Board she described her injuries in the following language:

"As a result of which fall she suffered injuries from which she has become permanently and totally incapacitated to perform any character of labor, and that by reason of said fall her spine and the nerves and muscles connected therewith were injured and bruised, and the nerves and muscles in the pelvic region and in her back were torn, bruised, lacerated, and strained."

Appellant did not question her petition in this respect by plea in abatement, charging that the same set up a different claim from that considered by the Board, or otherwise. Appellee introduced evidence tending to sustain said allegations of her petition. The court submitted to the jury as an issue whether appellee, in said accident, sustained injuries whereby her spine, or the nerves and muscles connected therewith were injured or bruised, or the nerves and muscles in the pelvic region or in the back were torn, bruised, lacerated, or strained. The jury answered said issue in the affirmative. Appellant, at the close of the evidence, moved the court to exclude all testimony in the case concerning any physical injury suffered by appellee other than "dislocation of one kidney and badly jarred all over," the testimony so sought to be excluded being described in said motion as all testimony "proving, or tending to prove that the spine of plaintiff and her nerves and muscles connected therewith were injured and bruised, and the nerves and muscles in the pelvic region were

torn, bruised, lacerated, and strained; that her health had been greatly impaired; that she suffers from great dizziness and fainting spells; that she has suffered a reflection of the uterus; that she suffers constantly from pains in the spine and back, and as a result thereof is unable to sleep and rest." The ground on which appellant sought to have said testimony excluded was that such specific injuries were not recited in appellee's claim for compensation so filed before the Board. The court overruled the motion.

The injuries suffered by appellee as a result of the accident are not included in those specifically enumerated in section 12 of part 1 of the Act where the amount of compensation is based on the nature of the injury. The injuries claimed to have been suffered by appellee belong to that class where the amount of the compensation is based on incapacity to work or labor resulting therefrom and the extent and duration of such incapacity. The act nowhere requires that the nature of such injuries when suffered shall be stated in the claim for compensation filed with the Board specifically and in detail, nor with medical or surgical accuracy and legal precision. A general description of such injuries meets every positive requirement of the act. The act expressly directs that the process and procedure before such Board shall be as summary as may be under its provisions. Part 2, § 4. The injuries complained of by appellee, both in her claim before the Board and in this suit, were all internal. The actual damage to the physical structure of her body must necessarily be determined largely from subsequent symptoms and manifestations, many of which seem to have developed or appeared long after the accident and long after the filing of her original claim for compensation. We think the statement in appellee's claim that she was "jarred all over" a sufficient basis for an amendment, setting up more specifically the exact harm or damage to her body resulting from such a "jar" or shock. The act, in providing for trials de novo in court, nowhere limits the court in its procedure in such suits, except that such suits must be against the insurance carrier instead of the employer, that the burden of proof shall be on the party claiming compensation, and that the rights and liabilities of the parties shall be determined by the provisions of the act. In such trials the act itself expressly provides that the court shall determine the issues instead of the Board. Our courts have frequently decided that a claim for lump sum compensation instead of weekly payments may be set up for the first time in such suits. We quote from the opinion of the Commission of Appeals in Consolidated Underwriters v. Saxon, 265 S. W. 143, 146, as follows:

"In fact, the Industrial Accident Board is not a court, but only an administrative board. There an 'appeal' from its decisions is not an

appeal from one court to another. But, on a trial de novo, were the Industrial Accident Board a court, the parties occupy the same position and are governed by the same rules as to pleadings and amendments as in the court a quo. The only test as to the right to file any pleading or amendment in a trial de novo is, would it have been admitted in the cause if it should have been commenced originally in the district court? Newton v. Newton, 61 Tex. 511; McLane v. Paschal, 62 Tex. 102."

The court did not err in the ruling here considered. Lumberman's Reciprocal Assn. v. Behnken, 112 Tex. 103, 114, 115, 246 S. W. 72, 28 A. L. R. 1402; Texas Employers' Ins. Assn. v. Jimenez (Tex. Civ. App.) 267 S. W. 752, 754, 755; Stowell v. Texas Employers' Ins. Assn. (Tex. Civ. App.) 259 S. W. 311, 312; Millers' Indemnity Underwriters v. Hughes (Tex. Civ. App.) 256 S. W. 334, 336, 337; Ætna Life Ins. Co. v. Rodriguez (Tex. Civ. App.) 255 S. W. 446; Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642, 644, 645.

[8] Appellant filed a formal motion, requesting the court to order appellee to submit herself for examination by three certain physicians therein named. The court entered an order requiring appellee to submit to a phyiscal examination by one of the physicians named in said motion. Said order was complied with. The motion did not assign any reason for asking that all three of the physicians named therein should participate in the examination of appellee. No exception was saved to the action of the court in designating only one of the physicians so named to make such examination, and we would not review the action of the court except for the fact that the cause is to be remanded for another trial. The right to a physical examination of the injured employee is conferred by and dependent upon the provisions of section 4 of part 2 of the Act. That section authorizes the Board to require any employee claiming to have sustained injury to submit himself for examination as often as may be reasonably ordered by the Board to a physician or physicians. Said section further provides that the insurance carrier shall have the privilege of having any injured employee examined by a physician or physicians of its own selection, at reasonable times, at a place or places suitable to the condition of the injured employee and convenient and accessible to him. We do not think it was the legislative purpose in enacting these provisions to give the insurance carrier an arbitrary right to demand during the trial of a case a physical examination of the employee suing for compensation for alleged injuries by an unlimited number of physicians, nor an unlimited number of such examinations by separate physicians. On the other hand, we are not prepared to say that

the purpose and intent of the statute would in all cases be effected by an order for such physical examination by a single physician.

Cases may exist where the ends of justice would best be served by an examination in which specialists in different branches of the medical profession were permitted to participate, or by separate examinations by specialists in different branches. We do think however, that in applications to the court for such examination or examinations during the trial, the necessity for an examination by more than one physician, or the necessity for separate examinations by different physicians, should be clearly set out in the application. If this had been done in this case, the trial court would have had some basis for determining how many physicians should participate in the examination, or whether separate examinations should be made by different physicians. Since no inflexible rule can be prescribed, the court in determining the issues arising on such an application should exercise sound judicial discretion, and his action thereon should be revised only when it is apparent that such discretion was abused. Texas Employers' Ins. Assn. v. Downing (Tex. Civ. App.) 218 S. W. 112, 115, 119, 122.

The judgment of the trial court is reversed, and the cause is remanded.