### TEXAS EMPLOYERS' INS. ASS'N v. KNOUFF. (No. 489.)

Court of Civil Appeals of Texas. Waco.
June 16, 1927.

Rehearing Denied Sept. 8, 1927.

**1. Master and servant ⚫⚓416—Industrial Accident Board may change or revoke order in compensation proceeding any time before appeal is perfected (Rev. St. 1925, art. 8306, § 12d).**

Under Rev. St. 1925, art. 8306, § 12d, Industrial Accident Board has the authority at any time before appeal is perfected from an order or decision of the board to review its order and change or revoke it.

**2. Master and servant ⚫⚓382 — Settlement agreement between injured employee and insurer is nullity until approved by Industrial Accident Board.**

A settlement agreement between an injured employee and the insurer is a nullity until approved by an order of the Industrial Accident Board.

**3. Master and servant ⚫⚓397—"Industrial Accident Board" is administrative body clothed with judicial authority.**

While the "Industrial Accident Board" may not, in the strict sense of the term, be a court, it is an administrative body clothed with judicial authority.

**4. Judgment ⚫⚓341—All judicial tribunals have control over their judgments during terms at which rendered or until appeal is perfected.**

All judicial tribunals have control over their judgments, orders, and decrees during the terms at which they were rendered or until appeal has been perfected.

**5. Master and servant ⚫⚓416—Industrial Accident Board held to have authority to set aside order approving settlement upon learning that settlement agreement had been obtained by fraud or mistake (Rev. St. 1925, art. 8306, § 12d).**

Under Rev. St. 1925, art. 8306, § 12d, the Industrial Accident Board was held to have authority to set aside its order approving a compensation settlement agreement between the injured employee and the insurer, when it was made known by the employee's petition that the settlement agreement had been obtained by fraud or mistake.

**6. Master and servant ⚫⚓417(5)—Where Industrial Accident Board had authority to set aside its former order, district court held to have jurisdiction to hear cause de novo.**

Where the Industrial Accident Board had authority to set aside its order approving a compensation settlement agreement, the district court had jurisdiction to hear the cause de novo on suit filed by the employee to set aside the final ruling and decision of the board.

**7. Evidence ⚫⚓258(2)—Admission in compensation case of conversation between claimant and alleged agent of insurer held proper, evidence of agency being sufficient.**

Preliminary evidence of agency being sufficient in compensation case, admission of conversation between claimant and the alleged agent of insurer as to treatments from a chiropractor held proper.

**8. Master and servant ⚫⚓417(4½)—Pleading permanent and total incapacity, and that spine and nerves were injured, held sufficient basis for evidence that client's side and back hurt and that she had misplaced kidney.**

Pleading alleging that claimant in compensation case became permanently and totally incapacitated from fall, and that her spine, nerves, and muscles connected therewith were injured, held sufficient basis to justify admission of evidence that her side and back hurt and that she had a misplaced kidney.

**9. Evidence ⚫⚓317(3)—Testimony of claimant in workman's compensation case that doctor told her she had misplaced kidney held within exception to hearsay rule.**

Testimony of claimant in a compensation case that while a doctor was treating her for her injuries he told her in connection with such treatment that she had a misplaced kidney held within an exception to the rule excluding hearsay evidence.

**10. Principal and agent ⚫⚓22(1)—Agency cannot be proved by declarations of supposed agent alone.**

The fact of agency cannot be proved by the declarations of the alleged agent alone, but there must be other evidence establishing prima facie such agency.

**11. Principal and agent ⚫⚓22(2)—Preliminary evidence of agency held sufficient to permit witness' testimony of declarations of alleged agent as proof of agency.**

Preliminary evidence of agency in a compensation case held sufficient to permit a witness to testify that the alleged agent said he represented the insurer in discussing elements of a settlement agreement.

**12. Evidence ⚫⚓461(1)—Admission of testimony to ascertain whether parties to written compensation settlement intended to include chiropractor's bill in medical expenses held proper.**

Admission of testimony in a compensation case to ascertain whether the parties to a writ-

ten compensation settlement intended to include a chiropractor's bill in the term "medical expenses" as used in the settlement agreement *held* proper, since it did not vary or contradict the written agreement, but only enabled court to construe a doubtful phrase.

**13. Evidence ⬦⟹155(10)—Where appellant's witness testified to conversation, appellant cannot complain that appellee's witness was afterward permitted to testify to same conversation.**

Where appellant had had its witness detail a conversation between himself and another, it was not error for the court afterward to permit the other to testify to the same conversation as appellee's witness.

**14. Evidence ⬦⟹317(3)—Testimony of claimant and her mother of conversations between them and attending physician as to prior kidney trouble held admissible, being within exception to hearsay rule.**

Testimony in a compensation case of the claimant and her mother as to conversations between them and attending physician while he was treating the claimant as to prior kidney trouble *held* admissible, being within an exception to the rule forbidding hearsay evidence.

**15. Evidence ⬦⟹271(13), 317(4)—Testimony of claimant's agent that he told claimant insurer's agent agreed to include chiropractor's bill in medical expenses held admissible as against objections it was hearsay and self-serving.**

Testimony of claimant's agent that before the claimant agreed to a compensation settlement he communicated to the claimant an agreement with the insurer's agent to include a chiropractor's bill in medical expenses, for which the insurer was to pay in the compensation settlement, *held* admissible as against objections that it was hearsay and self-serving.

**16. Contracts ⬦⟹94(6)—Courts will not cancel contracts for failure of party to keep promise to perform future act.**

Courts will not set aside or cancel contracts for failure of a party to keep a promise therein to perform some act in the future, since failure to perform will not usually amount to fraud.

**17. Contracts ⬦⟹94(6)—Where one making promise in contract intends not to perform it, such conduct is fraud authorizing court to cancel contract.**

Where one making a promise in a contract intended at the time of making it not to perform it, such conduct amounts to fraud authorizing the court to set the contract aside.

**18. Master and servant ⬦⟹417(7)—Evidence held to justify submitting issue of whether insurer ever intended to perform agreement inducing claimant to accept settlement.**

Evidence in compensation case *held* to justify submitting to the jury the issue of whether the insurer ever intended to perform an agreement inducing the claimant to accept the compensation settlement.

**19. Master and servant ⬦⟹417(7)—Issue of whether compensation claimant sustained injuries to spine or nerves or muscles held raised by evidence.**

Evidence *held* to justify submitting to jury the issue of whether compensation claimant sustained injuries to her spine or nerves or muscles, or whether the nerves or muscles in her back were torn or strained.

**20. Master and servant ⬦⟹417(7)—Whether injuries to claimant resulted in total permanent incapacity held for jury, notwithstanding lack of evidence showing probable outcome of disability.**

Evidence *held* sufficient to justify submitting issue of whether or not injuries to claimant resulted in total permanent incapacity to the jury, notwithstanding there was a lack of evidence showing the possible outcome of her disability.

Barcus, J., dissenting.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Suit by Neita Knouff against the Texas Employers' Insurance Association to set aside a final ruling of the Industrial Accident Board, Judgment for plaintiff, and defendant appeals. Affirmed.

Lawther, Pope, Leachman & Lawther, of Dallas, and Nat Harris, of Waco, for appellant.

Spell, Naman & Penland, of Waco, for appellee.

STANFORD, J. Appellee filed this suit to set aside a final ruling and decision of the Industrial Accident Board, awarding her compensation for an injury received by her on September 27, 1921, while in the course of her employment as telephone operator and saleslady for the Goldstein-Migel Company. Appellant began paying compensation to appellee October 12, 1921, at the rate of $8.65 per week, and continued same until June 12, 1922, which payments, including certain medical and hospital expenses, amounted to $261.98. On July 7, 1921, appellee and appellant entered into a settlement agreement, subject to the approval of the Industrial Accident Board, whereby appellant agreed to pay appellee $600 in addition to amounts theretofore paid, said agreement reciting:

"Claimant has been paid compensation to June, or a total of 26 weeks, at $8.65 a week, together with medical and hospital expenses."

Said settlement agreement was approved by the board, and the additional $600 paid appellee and duly receipted for by her, the receipt reciting that the total of $861.98 had been paid to her and that such sum fully redeemed the liability of the appellant. On November 27, 1922, appellee filed with the Industrial Accident Board a petition, stating, in substance, that appellant had failed and refused to car-

---

ry out the settlement agreement, etc., and prayed that upon rehearing by the board the settlement be set aside and another award be made, etc. On April 12, 1923, the board set aside its former award and made a new award in lieu thereof. Appellee, after giving timely notice of her unwillingness to abide the aforementioned award, in proper time filed this suit to set aside said final ruling and decision of the board and to recover compensation for 401 weeks from date of injury, less the amounts already paid her. The opinion on former appeal, Texas Employers' Ins. Association v. Knouff (Tex. Civ. App.) 271 S. W. 633, will greatly aid in understanding the issues involved. On the last trial, in response to special issues, the jury found:

"(1) The defendant, acting through its representative, did agree as a basis of the settlement of the claim of the plaintiff, Neita Knouff, to pay the chiropractor's bill, which she had incurred, as a part of the consideration for the settlement.

"(2) The plaintiff, Neita Knouff, would not have agreed to settle said claim at said time but for said representation upon the part of the Texas Employers' Insurance Association that it would pay said bill.

"(3) The Texas Employers' Insurance Association has not paid said chiropractor's bill.

"(4) The Texas Employers' Insurance Association, acting through its representative, at the time it made the representation referred to in special issue No. 1, did not have the intention at that time of paying said bill.

"(5) Miss Neita Knouff did sustain personal injuries from an accident by stepping from a platform in the Goldstein-Migel Company store on the 27th day of September, 1921, whereby her spine or the nerves or muscles in connection therewith were injured or bruised, or the nerves or muscles in the pelvic region or in the back were torn, bruised, lacerated, or strained.

"(6) Such injuries did result in the permanent, total incapacity of the said Miss Neita Knouff."

Upon these findings and such other findings by the court as the pleadings and evidence warranted, the court entered judgment for appellee.

Under the first assignment, appellant contends the parties in this case having reached a settlement agreement, and same having been approved by the board, said Industrial Accident Board had no jurisdiction to set aside said settlement agreement and to enter its ruling and decision of April 12, 1923, from which appellee appealed by suit in the district court, and that the trial court was without jurisdiction to consider an appeal from said decision and ruling of the board, and, the trial court being without jurisdiction, this court is without jurisdiction to adjudicate this cause. Appellant makes the further contention that the Industrial Accident Board is not a court, and that the settlement agreement, when approved by said board, could be

set aside only by a suit in some court of competent jurisdiction.

[1] Section 12d of article 8306 of Revised Statutes of 1925 provides:

"Upon its own motion, or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this law, or change or revoke its previous order," etc.

[2-4] This statute clearly confers upon the board the authority at any time before an appeal is perfected from an order or decision made by said board, for change of conditions, mistake, or fraud, either upon its own motion or upon the application of any person interested, to review said award or order, ending, diminishing, or increasing such order, or change or revoke such previous order. The settlement agreement between appellant and appellee was a nullity until approved by the order of the Industrial Accident Board. While said board may not, in the strict sense of the term, be a court, yet it is an administrative body, clothed with the authority of a judicial tribunal, and it is a general principle of law applicable to all judicial tribunals that they have control over their judgments, orders, and decrees during the terms at which rendered or until appeal is perfected. This is necessary to enable any judicial tribunal to correct errors and do justice between litigants, and this is especially necessary to enable the Industrial Accident Board, whose proceedings are rather informal, to enable said board to reach the ends of justice.

[5, 6] When it was made known to the board by appellee's petition that the settlement agreement in question had been obtained by fraud or mistake, under the board's powers conferred upon it by our statutes above referred to, said board certainly had the authority to set aside its order of approval and enter such order in lieu thereof as in its opinion the ends of justice required, and said board having set aside its order approving said settlement agreement and entered its award in lieu thereof, and appellee having duly appealed from such final order of the board, and having pleaded in the trial court that the compromise settlement was procured by fraudulent promises and was therefore void, and that same had not been performed, etc., the district court had jurisdiction to hear and determine the cause de novo and to render judgment for compensation. All these questions were passed upon and decided against appellant on the former appeal. Section 12, art. 8306, Revised Statutes 1925; Texas Employers' Ins. Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633; Miller's Indemnity, etc., v. Hayes (Tex. Com. App.) 240 S. W. 904; Texas Employers' Ins. Ass'n v.

Rodgers (Tex. Civ. App.) 284 S. W. 968. The above assignment is overruled.

[7] Under its second assignment appellant contends the court erred in permitting appellee to testify to a conversation had between her and Mr. Alexander, a purported representative of appellant, in regard to appellee's taking treatments from Dr. Lemly, a chiropractor, because, as appellant contends, there was no evidence that the said Alexander was an agent of the appellant. The record discloses that a Mr. Alexander came to Waco and took up with appellee the matter of effecting a settlement of her claim against appellant, and appellee, over appellant's objection, was permitted to testify the said Alexander told her he was a representative of the insurance company, and asked her how she was feeling, and told her to go ahead and take chiropractic adjustments. This evidence was admitted with the following explanation, as shown by qualification to bill of exception:

"The court admitted the conversation on the express assurance of counsel that evidence of another witness would show that Mr. Alexander was the agent of the Texas Employers' Insurance Association, and subsequently evidence of this agency was in fact introduced by the plaintiff in the testimony of W. L. Bacon."

W. L. Bacon testified that he knew that Mr. Alexander was an agent of the Texas Employers' Insurance Association at the time that Miss Knouff had the conversation with him, because Mr. Alexander had credentials from the Texas Employers' Insurance Association, and also because Mr. Alexander had in his possession a letter written to the Texas Employers' Insurance Association, for attention of Mr. Alexander, by the witness W. L. Bacon, and that Mr. Alexander conferred with Mr. Bacon in response to such letter. The correspondence, which appears in the record, between W. L. Bacon and the claim department of appellant, shows conclusively that Mr. Alexander, at the time of his negotiations with appellee in an effort to adjust her claim, was an agent for said purpose for said company. There is no merit in this assignment, and it is overruled.

[8] Under its sixth assignment appellant contends the court erred in permitting appellee to testify with reference to pain in her back and side, because not pleaded. Appellee alleged:

"She stepped from a platform and fell violently to the floor, and as a result of which fall she suffered injuries from which she has become permanently and totally incapacitated to perform any character of labor, and that by reason of said fall her spine and the nerves and muscles connected therewith were injured and bruised, and the nerves and muscles in the pelvic region and in the back were torn, bruised, lacerated, and strained."

Appellee testified, in part, as follows:

"Well, I don't sleep at night, I am restless; my back hurts and my side hurts."

The evidence to which the objection was made, upon the ground same had not been pleaded, was, "My back hurts and my side hurts." We think the pleading was sufficient as a basis for said evidence. This contention on the part of appellant was, in effect, overruled by this court on the former appeal. Texas Employers' Ins. Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633. This assignment is overruled.

[9] Appellant contends, further, the court erred in permitting appellee to testify that Dr. Colgin told her she had a misplaced kidney, and that it would later have to be removed, because there was no allegation of an injury to a kidney, and because same was hearsay evidence. The record discloses, according to the evidence of appellee, that at the time Dr. Colgin made said statement to her he was treating her for her injuries, and that he treated her for a misplaced kidney and made said statement in connection with such treatment. This evidence was properly admitted, and comes within an exception to the rule excluding hearsay evidence. We think also that appellee's allegations, to the effect that her spine and the nerves and muscles connected therewith were injured, bruised, torn, lacerated, and strained, were sufficiently broad as to constitute a basis for such evidence.

[10, 11] Under the tenth point appellant contends the court erred in permitting the witness Bacon to testify that Mr. Alexander said he represented the insurance company, because there is no proof in the record that Alexander was an agent of appellant, etc. It is true that agency cannot be proved by the declarations of the supposed agent alone, but there must be other evidence establishing prima facie such agency. This was done in this case. The witness Bacon testified that he wrote a letter to the Texas Employers' Insurance Association in reference to Miss Knouff's claim, requesting that some one be sent to confer with him in reference to said claim, and in response Mr. Alexander came, having in his possession said letter, and did so confer with him in an effort to adjust said claim; and that Mr. Alexander, as the representative of appellant, had conferred with him previously in reference to another claim. That appellant recognized Mr. Alexander as its representative is conclusively shown by the following letter:

"122750—Miss Neita Knouff.
        "The Goldstein-Migel Co.
                        "March 8, 1922.
"The Goldstein-Migel Co., Waco, Texas. Attention Mr. Bacon—Gentlemen: In Mr. Alexander's report of his interview with you on February 27th, he stated that you would let us

hear as to whether or not the claimant had decided to change the medical treatments. Please let us hear from you regarding this. Yours very truly, [Signed] M. F. Moore, Claim Department."

The above was written on a letter head of "Texas Employers' Insurance Association, Dallas, Texas, Interurban Building." Appellee's evidence fully established Mr. Alexander's agency, and there was no evidence to the contrary. There is no merit in this assignment and same is hereby overruled.

[12, 13] Under the twentieth assignment appellant contends the court erred in permitting the witness Bacon to testify to statements or agreement made prior to the execution of the written contract, to the effect that the insurance company agreed to pay Dr. Lemly's bill for chiropractic treatments. The written contract of settlement obligated appellant to pay $600 and all "medical and hospital expenses." After the execution of said written contract, appellant refused to pay the chiropractor's bill for $250, claiming same was not a medical bill or medical expense. There being some doubt as to whether said expression included a chiropractor's bill, it became important to ascertain the intention of the parties with reference to said bill at the time they executed the contract, or how the parties construed said expression at said time, and to do this it was proper to admit in evidence what was said by the parties in reference to this bill in reaching the settlement agreement. Such evidence does not vary or contradict the terms of the written contract, but only enables the court and jury to properly construe a doubtful phrase in accordance with the intentions of the parties. Again, appellant having had its witness, Ferguson, detail the conversation between himself and Bacon in reference to the chiropractor's bill before the settlement was made, it was not error for the court afterward to permit the witness Bacon to testify to the same conversation. This assignment is overruled.

[14] Under other assignments appellant contends the court erred in permitting Mrs. E. E. Knouff and appellee to testify to conversations between said witnesses and Dr. Colgin in reference to any prior kidney trouble of appellee, upon the ground same was hearsay, etc. The record discloses at the time these conversations occurred Dr. Colgin was treating appellee, and for the purpose of diagnosing her trouble inquired of the mother and appellee if appellee had ever had any kidney trouble, and was told of a slight kidney trouble appellee had when a child, etc. This evidence was admissible because it was a conversation between the witness and the attending physician, in response to questions propounded by the physician to said witness in an effort to properly diagnose appellee's trouble and give her proper treatment. Again, appel-

lant having previously had Dr. Colgin testify to said conversations between himself and Mrs. E. E. Knouff, and also one between himself and appellee as to the kidney trouble and as to whether such trouble existed prior to the time of the accident, the testimony of Mrs. E. E. Knouff and also of appellee was admissible in rebuttal. These assignments are overruled.

[15] Under other assignments appellant in various ways complains of the admission of the evidence of the witness W. L. Bacon to the effect that Ferguson, agent of the Texas Employers' Insurance Association, agreed to pay the medical expenses, including the chiropractor's bill, and that he, Bacon, communicated that agreement to appellee before she agreed to the settlement, upon the ground that this evidence was self-serving, was hearsay, and was admitted after both sides had rested, etc. The record discloses without any dispute that Ferguson was the agent of the appellant and had authority to make said settlement, and that the witness Bacon was acting in a sense as the agent of appellee in an effort to settle said claim. Appellant recognized the said Bacon as a representative of appellee in that all negotiations by appellant looking to a settlement of said claim, it seems, had been with W. L. Bacon as such representative. The written contract provided for the payment of medical expenses, and, as above pointed out, it was proper to show that the parties expressly agreed on the chiropractor's bill as a part of the medical expenses, and it was proper to permit the said Bacon to testify that he reported the proposition of settlement, including the chiropractor's bill to appellee, as the basis of the settlement accepted by her. None of appellant's objections are tenable, and these assignments are overruled.

Under other assignments, appellant contends the court erred in refusing to instruct in its favor because if appellant through its agent, Ferguson, did in the settlement agreement promise to pay all expenses, including the chiropractor's bill for $250, said promise or agreement was with reference to a matter to be performed in the future, and failure to perform constituted no proper grounds for setting aside said settlement and release; and under other assignments, the contention is made that the court erred in submitting the fourth special issue to the jury to find whether appellant intended to perform its agreement, if it made said agreement, to pay the chiropractor, at the time it made same, because there was no evidence raising such issue. As above stated, in response to the first special issue the jury found appellant did agree to pay the chiropractor's bill as a part of the consideration for the settlement, and in response to the second issue the jury found appellee would not have made said settlement but for appellant's promise to pay said ex-

pense, and in response to the fourth special issue the jury found that at the time appellant made such promise it had no intention of complying with same. This brings us to the question of fraud on the part of appellant, as a ground for setting aside the settlement agreement and release. The agreement or promise on the part of appellant was to pay said chiropractor's bill, a promise to be performed in the future.

[16, 17] The rule is well established in this state that the courts will not set aside or cancel contracts for failure of a party to keep a promise therein to perform some act in the future, because a mere failure to perform, while it amounts to a breach of the contract, authorizing the recovery of damages, does not usually amount to fraud. But an exception to this rule, as well established as the rule itself, is, where the one making the promise intended at the time of making same not to perform it, thus fraudulently making use of the promise as a device to procure the contract, such conduct amounts to fraud authorizing the court to set same aside. Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Mack Mfg. Co. v. Oeding (Tex. Civ. App.) 244 S. W. 156; Cearley v. May, 106 Tex. 442, 167 S. W. 725; Texas Mfg. Co. v. Webb (Tex. Civ. App.) 181 S. W. 853; Tatum v. Orange & N. W. Ry. Co., 245 S. W. 231. In the last above-cited case, our Commission of Appeals, in an opinion approved by our Supreme Court, said:

"Whether there was a verbal agreement, and, if so, what the intention of defendant in error was at the time of making it with reference to carrying it out, are matters peculiarly within the province of the jury. This intention is to be reached from a consideration by them of all the acts and declarations of the company's representatives, made in connection with securing the release, coupled with its subsequent conduct in reference to carrying out or refusing to carry out the verbal agreement."

[18] The written contract of settlement obligated appellant to pay "medical and hospital expenses." Appellee's witness W. L. Bacon, with whom appellant's representative conducted the negotiations for the settlement agreement, testified that the chiropractor's bill for $250 was discussed, and that appellant's said agent thought said bill was excessive, and that he, appellant's agent, went to the chiropractor doctor and discussed said bill with him in an effort to get said bill reduced, but in this he failed, and that appellant's said agent then agreed that appellant would pay said bill—would pay all expenses as well as the $600—and this was the proposition reported to appellee and by her accepted as the basis or consideration for the settlement agreement and release executed. Appellant's said agent admitted that the chiropractor's bill was discussed, and he admitted he went to see the chiropractor and tried to get him to reduce the amount of said bill, but said he did this to accommodate the witness Bacon. The jury found appellant, through its said agent, as a basis of settlement did agree to pay said bill, and that appellee would not have agreed to the settlement but for said agreement on the part of appellant. These findings are amply supported by the evidence, yet through its said agent appellant denies it ever agreed to pay said bill. The very fact that appellant's agent denied he made said agreement, in the face of the fact found by the jury that he did make it, is a strong circumstance tending to show he had no intention of carrying out the agreement which he in fact made. As to whether appellant, at the time it through its said agent made said agreement, intended to carry out same was a question of fact peculiarly within the province of the jury to decide from all the facts and circumstances surrounding and connected with the execution of said agreement. The jury resolved this issue in favor of appellee, and we think their finding is supported by the evidence. These assignments are overruled.

[19] Under other assignments appellant contends the court erred in submitting special issue No. 5 to the jury to find if appellee sustained injuries whereby her spine or nerves or muscles connected therewith were injured or bruised, or the nerves or muscles in the pelvic region or in the back were torn, bruised, lacerated, or strained, because the evidence was insufficient to sustain an affirmative finding by the jury on this issue, and because such injuries are not pleaded. The record discloses the injuries are submitted in this issue in almost the exact language in which pleaded, and, further, the issues here submitted are raised by the evidence. There is no merit in these assignments, and they are overruled.

[20] Under other assignments appellant contends the court erred in submitting special issue No. 6 to the jury to find if such injuries resulted in the total permanent incapacity of appellee, because there is no evidence to show appellee suffered total permanent incapacity by reason of her injuries. Appellee was injured in September, 1921. She at the time of the injury had been acting as telephone operator, the exchange of which was on a platform about three feet above the floor, and the steps to it were not stationary. As appellee entered the booth or exchange the steps were in place, but while at work said steps were removed, and when she came out, it being dark and she thinking the steps were in position, she stepped, expecting to step on said steps, but landed on the floor, stunned her, and about 20 minutes later she fell across a showcase, and was carried to the restroom and a doctor called. She was then suffering great pain, was nauseated and hurting all over. She remained on a cot in the restroom several hours, and was carried

home and put to bed, and Dr. Colgin again called. In a few days Dr. Colgin carried her to the hospital in an ambulance. She was at the hospital under treatment about a week and went home, and was in bed for some time, then began to sit up, and every five days went back to the hospital for treatment for seven weeks. The injury occurred in September, 1921; she was confined to the bed a part of every day until about December, then went back and tried to work, but could not work, fainted, and had to be carried home, and Dr. Colgin again called. She was then confined to her bed a part of every day for two weeks. Appellee and her mother testified that Dr. Colgin told them that she had a dislocated kidney and treated her for such, and finally told them an operation would be necessary, to which they objected, and appellee then, in January, began taking chiropractic treatments and continued same until the latter part of March or the first of April. During all of said time she had fainting spells. Appellee testified that she had tried to work, but generally about ten days was all she could work; that she fainted on several occasions while trying to work; that she had not worked a day that she felt like working; that she did not sleep at nights, was restless, and her back and side hurt all the time; that she often fainted and had to be carried home; that she fainted on the streets, at the Chamber of Commerce, in her own home, and in different friends' houses. The record is conclusive that at the time she was injured she weighed 138 pounds, and at the time this case was tried last she weighed 113½ pounds. The evidence of appellee and her mother is undisputed that prior to her injury she was a healthy, stout, active young lady and never lost a day from her work on account of being sick. Dr. Colgin testified as an expert, and in reply to a hypothetical question embodying a statement of appellee's injury and a detailed statement of all the facts in connection therewith, her loss of weight, continued fainting spells, etc., said:

"If these things be true, then it is my opinion that she has not recovered."

According to the evidence of appellee and her mother, appellee is totally and permanently disabled. It is true, there is no evidence showing what the doctors call prognosis, that is, the probable outcome of her disability; but we think the material loss of weight, the continued fainting spells, the constant suffering of pain in the body, and the frequent collapses when appellee attempts to work, all of which are shown to have originated immediately after the accident and to have continued four and a half years to the time of trial, afford evidence from which the jury might conclude that a recovery, either partial or complete, if possible, was highly improbable. Maryland Casualty Co. v. Mueller (Tex. Civ. App.) 247 S. W. 609. We have not attempted to state all the evidence tending to show appellee's permanent total disability, but we think the issue as to whether or not she suffered permanent total disability, within the meaning of the Employers' Liability Act, was clearly raised by the evidence, and this being an issue of fact, the court was correct in submitting same to the jury.

We have carefully considered all of appellant's assignments, and finding no reversible error, overrule same and affirm the judgment of the trial court.

BARCUS, J. I regret that I cannot agree with my associates in the disposition of this cause. I do not think the evidence is sufficient to support a finding by the court or jury that appellee was either totally or permanently disabled. Appellee testified that since the injury she had worked for Miss Odle, for A. C. Patton & Co., for Goldstein-Migel Company, for Sanger Bros., and for a firm at Georgetown, and that she had never quit work for any of said concerns on account of sickness except when working for Miss Odle. She testified that in the fall of the year before this cause was tried in 1926, she worked in Georgetown for six weeks at one time, and had received $20 per week wages when she had only received $15 at the time of the injury, and that she was able to continue the work but the firm had let her out because they did not need her services. Neither she nor any other witness was even asked the question as to whether her injuries were permanent. There is not in the entire statement of facts a single line of testimony that her disabilities will continue. The only thing on which the jury could base its finding that she was permanently disabled is the fact that, at the time of trial, something over four years had elapsed since the injury and appellee and her witnesses testified that she was still suffering as a result therefrom. I do not think the jury was authorized to base said finding on said presumption. There were only two doctors who testified on the trial of the case, one placed on the stand by appellee and one by appellant, and each of said doctors testified that, in his opinion, at the time of trial appellee had entirely recovered from her injury. Lumbermen's Reciprocal Ass'n v. Wells (Tex. Civ. App.) 283 S. W. 208; Lumbermen's Reciprocal Ass'n v. Coody (Tex. Civ. App.) 278 S. W. 856.

In my opinion, the plea in abatement filed by appellant should have been sustained. I do not think under the facts in this case the Industrial Accident Board was authorized to reopen the award or to set aside its former award, and for said reason I do not think the district court had any jurisdiction to hear or determine this cause. The Work-

men's Compensation Act provides that the Industrial Accident Board, after an award is made, may at any time during the period of compensation review or set aside or in any way amend its former award on its motion or on the application of any person interested showing "a change of conditions, mistake or fraud." Section 12d art. 8306, Revised Statutes. In the petition for review filed with the Industrial Accident Board, as well as in the suit filed in the district court, appellee does not claim there was any change of conditions or any mistake or fraud in the making and entering of the award on the agreed settlement which she had with appellant. Her only contention is that appellant was to pay the doctor's bills, which they had failed and refused to pay. The Workmen's Compensation Act provides specifically that where an award is made and the insurance company fails or refuses to comply therewith, the Industrial Accident Board may certify that fact to the commissioner of insurance and have the company's right to do business in Texas forfeited. Section 5, art. 8307, Revised Statutes. In addition to the power given the board, the party in whose favor the award has been made, where the company refused to pay same, may bring suit in a court of competent jurisdiction for the amount of the award, plus 12 per cent. damages and reasonable attorney's fees. Section 5a, art. 8307, Revised Statutes. Where the Legislature has provided a specific penalty to be inflicted and a specific remedy for the enforcement of a statute, said penalties and remedies exclude all others, and, in my opinion, the Industrial Accident Board cannot simply, because the insurance company refuses to pay an award, reopen the case and make an entirely different award.

In my opinion, appellee is not entitled to have the agreed award as entered by the Industrial Accident Board set aside for failure on the part of the insurance company to pay the doctor's bill, since it appears without dispute in the record that she has never paid the same and is not obligated to pay it. It appears that Goldstein-Migel Company has paid the doctor's bill in question and that no claim or demand, request, or obligation as shown by the record is now resting on appellee. In her testimony appellee does not claim to have suffered any loss or injury by failure of the insurance company to carry out the contract she claims it made with her at the time of the settlement. It is shown without dispute that the insurance company agreed to and did pay her $600 in addition to the amounts she had already been paid, and she does not claim that the compromise settlement and agreement was entered into by reason of any mistake or fraud, or that any changed conditions have taken place since the time she made the settlement agreement.